**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**BONIFACIO LATALLADI, Defendant**

Criminal No. 29-1970

Municipal Court of the Virgin Islands
Div. of St. Thomas and St. John

October 30, 1970

BRUCE MACGIBBON, First Assistant Attorney General, St. Thomas, V.I., *in behalf of the Government*

ALPHONSO A. CHRISTIAN, Attorney, St. Thomas, V.I., *for the defendant*

HOFFMAN, *Judge*

OPINION

The defendant Bonifacio Latalladi charged with maintaining a public nuisance on his premises at No. 170 Altona in St. Thomas, Virgin Islands, in violation of 14 V.I.C. § 1461 and 14 V.I.C. § 1462 was found guilty by the Court on March 23, 1970, after protracted litigation. Sentencing was deferred awaiting pre-sentence report. Defendant subsequently filed an application with the Court which it will consider as a Motion to Vacate. The Court requested counsel for the respective parties to submit memoranda on the issues raised in oral discussion. The Government's memorandum was filed July 28, 1970.

In the present status of this case, since the Court did defer sentencing and as no final appealable judgment has yet been entered under 5 App. IV, V.I.C. Rule 134(b) (*Judgment*), the Court is authorized and free to do what it perceives is fair and just under the law. Therefore, after carefully considering the briefs submitted, the Court by its own independent research and analysis is of the opinion that its earlier finding of "guilty" should be rescinded.

The underlying facts of the case were brought out at the original hearing of March 17, 1970. At this hearing the defendant did not deny a number of relevant matters which the five government witnesses brought out. From the evidence presented that day in court and from that presented on March 23, 1970, the Court makes the following:

1. That the defendant kept junk such as copper and iron scrap, as well as batteries and wire on his property which was very unsightly.

2. That the defendant had trucks and trailers which came onto his property to load and unload this junk which was used in the defendant's business and these activities made excessive noise disturbing the two neighbors.

3. That the defendant kept fighting cock roosters in an objectionable fashion at times tied to the complainant's (Ruth Boyd's) wall and these roosters on frequent occasion caused much loud noise disturbing the complaining witness and another neighbor, James Francis.

4. That tenants living in the defendant's three story structure stayed up late playing records and made excessive noise disturbing said Ruth Boyd and James Francis.

## DISCUSSION

■ In approaching the problem before it the Court begins with one of the most basic concepts of American jurisprudence—that no person shall be adjudged guilty of criminal behavior unless his conduct falls within clearly defined activity which the legislature has declared criminal. To find a person guilty of committing a crime is to find that he has in effect violated one of society's most fundamental laws. This of course accounts for the grave stigma attached to criminal conduct.

■ Before a person's acts may be categorized as criminal, society demands that these acts must first have been defined and made criminal by the legislature. Fundamental fairness and due process require that an individual have some notice or at least possible access to notice that an activity which he is contemplating is in fact criminal before he can be held to have committed a crime. Once

this is recognized, the question posed by this case is easily resolved.

The statute under which the defendant is being prosecuted, 14 V.I.C. § 1461 and 14 V.I.C. § 1462 reads as follows:

§ *1461. Public nuisance defined*

Anything which—

(1) is injurious to health, indecent, offensive to the senses or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by a considerable number of persons; . . . .

History

Revision note. Based on the 1921 Codes, Title IV, ch. 7, § 3. In subdivision (1), words *"by an entire community or neighborhood, or"* which appeared before the words "by a considerable number of persons" were omitted *as being included in the latter phrase.* (Emphasis added.)

§ *1462. Public nuisance, maintaining, failure to remove*

Whoever—

(1) maintains or commits any public nuisance for which no punishment is prescribed elsewhere in this title or other law; or

(2) willfully omits to perform any legal duty relating to the removal of a public nuisance—shall be fined not more than $200 or imprisoned not more than 1 year, or both.

██ ██ This statute seems declaratory of the common law which defines a public nuisance as "the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public or works some substantial annoyance, inconvenience or injury to the public."[1] "A nuisance is public if it affects the entire community or neighborhood, or any considerable number of persons."[2] That the statute in question is declaratory of the common law is made clear by the revision note to 14 V.I.C.

---

[1] 39 Am. Jur., Nuisances, § 8.

[2] Vol. 2, Wharton's Criminal Law and Procedure, p. 691 and cases cited therein.

§ 1461, which indicates that "entire community or neighborhood" is encompassed by the words "a considerable number of persons".

■ "The difference between public and private nuisances is that a public nuisance affects the public at large, and a private nuisance, the individual or a limited number of individuals only."[3] In the present case the nature of the charges against the defendant appear quite localized. Indeed the Bill of Particulars submitted by the Government makes reference to but one complainant who lives just across the street from the defendant. At the trial itself five witnesses testified on behalf of the Government. Of the five only two, Ruth Boyd and James Francis, presently lived in close proximity to the defendant. The others were either merely visitors of these witnesses or else had once lived in the vicinity but had since moved. As far as these witnesses were concerned, they either were no longer affected by the defendant's activities or at most were only occasionally affected. In addition there were other neighbors living in the area who testified that the defendant's activities did not really disturb them.

The Government in its brief on page 4 relies on People v. Rubenfield 254 N.Y. 245, 172 N.E. 485 (1930) for the following proposition: "The statutory requirement of a 'considerable number' of persons adversely affected need not be very great, and indeed, depending upon the circumstances of the particular case, may be rather small." This Court, however, does not interpret the Rubenfield case, supra, as standing for that proposition notwithstanding the following language from that opinion:

"To be reckoned as 'considerable' the number of persons affected need not be shown to be 'very great'. Enough that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community." 172 N.E. at 486.

---

[3] 39 Am. Jur., Nuisances, § 10.

In Rubenfield the defendant was a caterer who conducted his business in a heavily populated district in New York City. Beginning in the evening and lasting until dawn the defendant entertained at weddings, dances and other such occasions. There were sounds of nightly revelry accompanied by drums and brasses which upset the peacefulness of the surrounding community. In addition to the language previously cited, Justice Cardozo who wrote the opinion of the Court was careful to point out:

"We think the area of this tumult, the range of its disturbing power, is wide enough to bring it within the category of an offense to the community, or so the triers of the facts might find. Here is something more than an interference with a single dwelling or even two or three. Here is tumult so great, if the witnesses are to be credited, as to be a plague to the whole neighborhood." 172 N.E. at 487.

██ ██ In the instant case, however unsightly the defendant's activities may have been and whatever private rights under 28 V.I.C. § 331 they might give rise to, they cannot as a matter of law be found to constitute a public nuisance. "It is axiomatic that statutes creating and defining crimes cannot be extended by intendment. Before a man can be punished his case must be plainly and unmistakably within a statute."[4]

On the final hearing of this matter the Government relied on a different theory to establish a public nuisance. At trial the Government attempted to prove a violation of the Zoning Laws of the Virgin Islands (29 V.I.C. § 260 et seq.) in order to establish a public nuisance under 29 V.I.C. § 271(c). That section reads as follows:

29 V.I.C. § 271. *Provisions for enforcement; penalties*

(c) Any building or structure set up, erected, constructed, altered, enlarged, converted, moved or maintained contrary to the provisions of this subchapter is unlawful and a public nuisance.

---

[4] Vol. 1, Wharton's Criminal Law and Procedure, p. 40, 41.

It is the Government's contention that the defendant, Bonifacio Latalladi, has violated the Zoning Laws of the Virgin Islands by storing on his property junk such as batteries, wire as well as copper and iron scrap with which he deals commercially notwithstanding the fact that his property is zoned as an R4 Residential Area. The Government further contends that the defendant is also in violation of the Zoning Law because he has maintained fourteen rooms in his three-story structure which he rents to guests.

The above uses under 29 V.I.C. § 266 constitute special exceptions to an R4 zone and since the defendant did not apply to the Planning Board under 29 V.I.C. § 269 (*Special exception and variance procedure*) for these special exceptions, the Government reasons that the defendant has no authority to allow these uses to continue on his property and that such uses constitute violations of the Zoning Law.

Certain questions not fully explored at trial are necessary to consider before it can be determined whether or not a zoning violation does, in fact, exist at the defendant's premises. Among these is the question of how long have these uses been in existence at the premises in question—see 29 V.I.C. § 265(a) which indicates that if these uses have been continuously in existence from before December 12, 1961 to the present that they are not prohibited now. Another question is whether the defendant is operating a "rooming or boarding house" on the one hand (a permitted use under 29 V.I.C. § 266, Appendix I) or whether he is instead operating an "apartment house" (a special exception requiring approval of the Planning Board).

█ These questions are merely raised and no attempt is made to resolve them here in light of the disposition of the broad zoning question.

29 V.I.C. § 271(d) states:

Any person who has been notified of a violation of the provisions of this subchapter by the Commissioner of Public Works or the Planning Board and shall have been ordered to comply with the same, shall be allowed a period of 15 days to comply with the order of the Commissioner or the Board. Whoever, having been so notified and shall have willfully failed to comply shall upon conviction of the same be fined not more than $50. Each day of violation after such conviction shall constitute a separate offense and shall be punishable by a similar fine.

The records do not indicate that Mr. Latalladi ever received such a notification from the Commissioner of Public Works or the Planning Board stating that he was in violation of the provisions of the Zoning Law nor does it appear that this matter was even passed upon by the Commissioner of Public Works or the Planning Board. This omission or failure to comply with 29 V.I.C. § 271(d) is fatal to the Government's case and precludes it from attempting to prove in court a zoning violation.

■ This is so despite the language of 29 V.I.C. § 271(f) which provides as follows:

In case any building or structure is erected, constructed, altered, repaired, converted or maintained, or any building, structure or land is used in violation of this subchapter, the Attorney General, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful action, to restrain, correct, or abate such violation or to prevent the occupancy of the building, structure or land or any illegal act or use in or about such premises.

The phrase "in addition to other remedies" does not mean that the Attorney General can circumvent the provisions of 29 V.I.C. § 271(d). The phrase merely indicates that the remedies listed in section 271(f) are illustrative and not exhaustive of the remedies which are available after the procedure set forth in 29 V.I.C. § 271(d) is complied with.

The above interpretation of the provisions for enforcement of the Zoning Law (29 V.I.C. § 271) is supported by

145

other sections of the same Act. For example, 29 V.I.C. § 270 gives the Board of Zoning, Subdivision and Building Appeals, the power to hear and decide appeals under the Zoning Law in the following instances:

(1) Where appeals have been made against any order, requirement, decision, or determination made by the Commissioner of Public Works in the enforcement of the zoning regulations.

(2) Where appeals have been made against any order, requirement, decision, or determination made by the Planning Board in the enforcement of the subdivision regulations, or in its decisions on zoning, variance, and special exceptions.

This section contemplates and establishes a type of grievance procedure available to individuals who are given just such a notice as that discussed previously in section 271(d).

It seems highly unlikely that the mere words "in addition to other remedies" found in section 271(f) were intended by the Legislature to enable the Attorney General to circumvent at will and thereby render nugatory the grievance procedure which the Legislature established in section 270 for the benefit of the general public.

Other sections supporting this interpretation of section 271 include sections 268 and 269. 29 V.I.C. § 268 *Administration and Enforcement* provides that the provisions of the Act "shall be administered by the Commissioner of Public Works except for those functions specifically designated to the Planning Board". Paragraph (c) of this section provides:

29 V.I.C. § 268(c)

Appeals from decisions by the Commissioner of Public Works or the Planning Board may be made to the Board of Zoning, Subdivision and Building Appeals.

The next section of the Act (29 V.I.C. § 269) sets up the procedure through which an individual can apply to the Planning Board for a special exception or variance from

the permitted uses specified in Appendix I of section 266 and section 267.

It seems clear from these sections that the Legislature intended that a uniform system for the administration and enforcement of the Zoning Laws be established with the Planning Board and the Commissioner of Public Works playing essential roles in this process. One of the most important duties of the Planning Board and the Commissioner of Public Works in seeing to it that the Zoning Law is uniformly enforced is giving notice to people whom it believes are violating the provisions of the Act (29 V.I.C. § 271(d)). Only after this determination has been made by the above designated authorities in charge of the administration of the Act, does the Statute authorize the Attorney General to proceed in Court under section 271(f).

From the foregoing facts and discussion, the Court, in summary, makes the following:

## CONCLUSIONS OF LAW

The defendant is not guilty of maintaining a public nuisance (14 V.I.C. § 1461 and 14 V.I.C. § 1462) and the charges are dismissed.

In view of this prolonged litigation the Court urges Government, the defendant and the parties immediately affected by continuation of the disturbing conditions caused by defendant's activities, and their respective attorneys, to institute serious efforts to resolve the same without further litigation to permit all concerned peaceable enjoyment of their respective properties.