**GOVERNMENT OF THE VIRGIN ISLANDS IN THE INTEREST OF EVAN S.**

## Family No. 31/1979
## Territorial Court of the Virgin Islands
### Div. of St. Thomas and St. John
## May 30, 1979

---

LAURENCE RAMER, Assistant Attorney General (Department of Law—Criminal Division), St. Thomas, V.I., *for the Government*

ALAN D. SMITH, Chief Public Defender, Professional Building, St. Thomas, V.I., *for the minor*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

This matter is before the court on the minor's motion to dismiss on double jeopardy grounds. Resolution of the motion requires the court to determine whether the doctrine of collateral estoppel, as embodied in the guarantee against double jeopardy, Ashe v. Swenson, 397 U.S. 436 (1970), is applicable to a juvenile proceeding.[1]

The minor, Evan S., initially was charged with operating a motor vehicle without a license[2] and reckless driv-

---

[1] The Fifth Amendment of the United States Constitution provides in part:

"No person shall . . . be subject for the same offense to be twice put in jeopardy of life and limb; . . ."

The Fifth Amendment has been made applicable to the states through the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784 (1969), and to the Virgin Islands pursuant to Section 3 of the Revised Organic Act, prec. 1 V.I.C., 48 U.S.C. 1561, as amended, Public Law 90–496, § 11, 82 Stat. 841, Aug. 23, 1968. See also Government v. Smith, 8 V.I. 389, 445 F.2d 1089 (3d Cir. 1971). Moreover, pursuant to paragraph 3 of Section 3 of the Revised Organic Act, "no person for the same offense shall be twice put in jeopardy of punishment."

[2] 20 V.I.C. § 371.

ing.[3] These two charges, in the form of uniform traffic citations (hereinafter referred to as the traffic charges or traffic cases), were tried before the Family/Juvenile Division of this court on March 8, 1979.[4] The minor's motion for judgment of acquittal on the charge of operating a vehicle without a license was granted, but he was found delinquent on the charge of reckless driving. At the scheduled dispositional hearing on March 13, 1979, the court, sua sponte, vacated its finding of delinquency on the reckless driving charge. The court concluded, upon reflection, that the Government had not shown beyond a reasonable doubt that, in fact, the minor was operating the vehicle at the time in question.

On March 7, 1979, before the motor vehicle charges had gone to trial, the Government filed the instant action, a five-count complaint charging the minor with possession of stolen property worth more than $100,[5] unauthorized use of a motor vehicle,[6] leaving the scene of and failing to report an accident,[7] as well as reckless driving and driving without a license.[8] Having had the issue of the minor's operation of the motor vehicle adjudicated adversely to the Government, the minor argues that the Government cannot come back into court and relitigate the same issue of identity when all of the charges grew out of the same incident.

---

[3] 20 V.I.C. § 492.

[4] Fam/Juv. Nos. 20/79 and 32/79.

[5] 14 V.I.C. § 2101(a).

[6] 14 V.I.C. § 1382.

[7] 20 V.I.C. § 541.

[8] When the two traffic tickets came on for hearing on March 8, the court specifically inquired of counsel for the Government as to how it wished to proceed in view of the March 7 complaint and the fact that all charges arose out of the same incident. The Government stated that it wanted to try only the reckless driving and driving without a license charges in the Family/Juvenile proceeding because it was going to seek a transfer to the United States District Court of the other counts charged in its March 7 complaint so that the minor could be treated as an adult. 4 V.I.C. § 176 (1978 Supp.). The Government subsequently abandoned its plan to seek a transfer of the three remaining charges, leaving these three pending in the Family/Juvenile Division of this court. These three charges will hereinafter be referred to as the "criminal" charges.

In support of this position the minor relies on the doctrine of collateral estoppel as embodied in the guarantee against double jeopardy. Ashe v. Swenson, supra.

■ There can be no disputing the application of the double jeopardy bar to juvenile proceedings. Whatever doubt there may have been after In re Gault, 387 U.S. 1 (1967), and In re Winship, 397 U.S. 358 (1970), has been definitively resolved by Breed v. Jones, 421 U.S. 519 (1975). In Breed the Court held that jeopardy attaches to a juvenile proceeding

whose object is to determine whether [a juvenile] has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years.

Id. at 529.

■ Reckless driving is a violation of the criminal laws of this jurisdiction, and, upon conviction, an adult faces a fine of not more than $200 or imprisonment for not more than one year or both. 20 V.I.C. §§ 492 and 544(a). When the respondent is a minor, as in this case and in the reckless driving case, the jurisdiction of the Family/Juvenile Division of this court attaches, 5 V.I.C. § 2503 and 4 V.I.C. § 172(1)(D), and the court, on a finding of delinquency, may commit the minor for an indeterminate period, not to exceed the child's twenty-first birthday, to a public or private institution or agency. 5 V.I.C. § 2506(2).[9] As the Supreme Court has stated:

the term " 'delinquent' ha[s] come to involve only slightly less stigma than the term 'criminal' applied to adults," . . . and that, for purposes of the privilege against self-incrimination, "commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.' "

---

[9] The court also may impose a $100 fine, revoke or suspend the minor's driver's license, and impound the motor vehicle for 60 days. 20 V.I.C. § 550 (1978 Supp.). A driver's interest in the continued possession of his license is substantial and implicates the due process clause of the U.S. Constitution. Bell v. Burson, 402 U.S. 535 (1971).

Breed v. Jones, supra, 421 U.S. at 530, quoting In re Gault, supra, 387 U.S. at 24, 50. See also In re R. L. K., 24 Cr.L. 2408 (Ill. App. December 29, 1978).

 Next, the Government, by semantic gymnastics, attempts to create a classification system within the double jeopardy clause never before envisioned or enunciated, maintaining that its complaint should not be barred by the minor's acquittal on the reckless driving charge because it is "a much less serious offense" than the pending charges. Assuming arguendo the existence of the hierarchy of crimes rationale that the Government postulates,[10] the court fails to see the relevance of this hierarchy for the purpose of double jeopardy analysis. If jeopardy attached in the traffic cases, it is of no consequence that the offenses charged by the present complaint are more or less serious. As long as the reckless driving charge may be characterized as "criminal", jeopardy will attach, regardless of the severity of the prescribed punishment, and will act as a bar to a second prosecution for the same offense. See, e.g., Benton v. Maryland, 395 U.S. 784 (1969). Whether an offense is criminal and imposes a criminal sanction is a question of statutory construction, Helvering v. Mitchell, 303 U.S. 391, 399 (1938), and there can be no dispute that, as to an adult, a conviction of reckless driving is a conviction of a criminal offense that carries a criminal sanction. That reckless driving is characterized as a misdemeanor, see 14 V.I.C. § 2(2), is of no consequence to the minor's motion. As the Supreme Court said in Ex parte Lange, 18 Wall 163, 173, 21 L.Ed. 872 (1874):

---

[10] This, however, is an assumption the court is unwilling to make for any purpose other than the discussion that follows. While not a felony, an adult charged with reckless driving may be sentenced to one year in jail. Thus he has the right to trial by jury, Baldwin v. New York, 399 U.S. 66 (1970), and may not be imprisoned unless he has had the assistance of counsel. Scott v. Illinois, 440 U.S. 367 (1979). That these guarantees apply to such a proceeding is an indication of the seriousness of the crime and of the flaws in the Government's argument.

these pleas [of double jeopardy] are now held valid in felonies, minor crimes, and misdemeanors alike, and . . . we shall see ample reason for holding that the principle intended to be asserted by the constitutional provision must be applied *to all cases* where a second punishment is attempted to be inflicted for the same offense . . . .[11] (Emphasis added.)

■ The fact that we here are dealing with a juvenile proceeding as opposed to an adult criminal proceeding does not require a different conclusion. As the Supreme Court in Breed made clear, a finding of delinquency with its attendant consequences must be held to implicate the guarantees against a minor being put in double jeopardy.

We deal here not with "the formalities of the criminal adjudicative process,". . . but with an analysis of an aspect of the juvenile-court system in terms of the kind of risk to which jeopardy refers. Under our decisions we can find no persuasive distinction in that regard between the proceeding conducted in this case . . . and a criminal prosecution, each of which is designed "to vindicate [the] very vital intent in enforcement of criminal laws."

Id. at 531.

■ Even if the double jeopardy clause of the Fifth Amendment permitted a distinction between juvenile and criminal proceedings, our Revised Organic Act also commands that "no person for the same offense shall be twice

---

[11] See also Breed v. Jones, supra. ("Although the constitutional language 'jeopardy of life or limb,' suggests proceedings in which only the most serious penalties can be imposed, the clause has long been construed to mean something far broader than its literal language." Id. at 528, citing Ex parte Lange); United States v. Security National Bank, 546 F.2d 492 493 (2d Cir. 1976) ("in Ex parte Lange . . . the Supreme Court . . . held that [the double jeopardy clause] applied to misdemeanors as well"); Clawans v. Rives, 104 F.2d 240 (D.C. Cir. 1939); United States v. Farwell, 76 F.Supp. 35 (D. Ala. 1948). See also Robinson v. Neil, 409 U.S. 505 (1973), rev'g, Robinson v. Henderson, 268 F.Supp. 349 (E.D. Tenn. 1967). (Double jeopardy attached even though the crime for which defendant was convicted was punishable by only $50 and 30 days imprisonment.) Cf. United States ex rel. Triano v. Superior Court of New Jersey, 393 F.Supp. 1061, 1064 (D.N.J.), aff'd, 523 F.2d 1052 (3d Cir. 1975), cert. denied, 423 U.S. 1056 ("The evil against which the clause protects a . . . defendant is not a second *conviction* or a second *punishment* for the same crime. Rather, the provision protects an individual against the second *trial* itself.") (Emphasis in original.)

put in jeopardy of punishment." This language forbids the distinction proffered by the Government. Having framed this clause in terms of "punishment", Congress has eliminated from consideration any issue of the severity of punishment. Consequently, in this jurisdiction it is not a matter of whether a second trial will jeopardize "life or limb", but rather whether any type of criminal punishment may be inflicted in a second proceeding.[12] Therefore, under either the double jeopardy clause of the United States Constitution or the jeopardy provision of the Revised Organic Act, the court can find no basis for concluding that jeopardy did not attach in the first trial because it was "merely" a traffic case charging misdemeanors.

■ Having thus rejected the more serious versus less serious argument, the court must decide whether the judicially engrafted collateral estoppel doctrine of the double jeopardy clause is applicable to the instant prosecution. Under this doctrine the Government is free to charge the minor with other crimes arising out of the same incident, but it may not prove the other crimes "by asserting the facts necessarily determined against it on the first trial." United States v. Mespoulede, 597 F.2d 329 (2d Cir. 1979), quoting United States v. Kramer, 289 F.2d 909 (2d Cir. 1961).

[w]hen an issue of ultimate fact had once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . [C]ollateral estoppel . . . [is] an established rule of federal criminal law. . . .

---

[12] While it is true that a juvenile proceeding has as one of its purposes the providing of "adequate care, protection and rehabilitation of youths" who are found to be delinquent, 19 V.I.C. § 1167, Act No. 4120, approved April 14, 1978, the consequences clearly are severe enough to constitute punishment. Moreover, in view of the language of Breed v. Jones, 421 U.S. at 529, quoted on page 314, supra, there can be little doubt that the mere labeling of a minor as a delinquent and the potential for commitment must be construed as being punishment within the meaning of Section 3 of the Revised Organic Act, regardless of the shroud of secrecy that is supposed to surround juvenile proceedings.

Ashe v. Swenson, supra, 397 U.S. at 443. Resolution of the minor's motion to dismiss thus turns on whether an issue of ultimate fact, having once been determined against the Government, is now being pressed in this second prosecution.

■ The Government argues against application of the doctrine because "collateral estoppel in the criminal context is a much more recent doctrine than classic double jeopardy." Thus, the Government concludes that there is a "novelty" to the doctrine that should not require its application to juvenile proceedings. The Government then attempts to bolster this argument by resort to the more serious versus less serious offense thesis that the court has rejected. As novel as the Government may view this doctrine, it now is embodied in the Constitution as interpreted by the United States Supreme Court in Ashe v. Swenson, supra, and is applicable to juvenile proceedings pursuant to Breed v. Jones, supra. See also Matter of Tony M, 44 N.Y.2d 899, 407 N.Y.S.2d 634 (1978).

The Government, however, contends that Ashe v. Swenson is factually distinguishable because in Ashe the charges in the first and second trials were identical whereas here they are not. This is a distinction without merit because here a conviction on any of the five charges turns on the basic factual issue of identity. In Ashe the court held:

Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of [the same victim] in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of the case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers.

Id. at 446. See also Harris v. Washington, 404 U.S. 55 (1971).

In U.S. ex rel. Triano v. Superior Court of New Jersey, supra, the petitioner had been acquitted in a previous trial of bribery and unlawful taking. The state then sought to prosecute him on a charge of misconduct in office, relying, in part, on facts that had been determined against the state in the first trial. The petitioner sought habeas relief in the United States District Court and a stay of the proceedings in the state court, contending that the second prosecution would impermissibly place him twice in jeopardy. The state, like the Government here, argued that the crimes were factually distinguishable. The court, relying on Ashe, stated,

Although the crime of misconduct in office and the crimes of bribery and unlawful taking are indeed separate crimes, they overlap when the state charges the identical conduct, that is, the solicitation or the receipt of an illegal payment, as *the* unlawful taking and *the* specific act of misconduct in office. . . .

Just as the protection against double jeopardy combines with elementary principles of res judicata to prevent the State from twice prosecuting a defendant for the same statutory crime, so does double jeopardy encompass the doctrine of collateral estoppel as well, prohibiting the state from twice asserting identical factual allegations against an individual, where the first assertion of those allegations resulted in an acquittal. The doctrine of double jeopardy thus includes not merely the prohibition against twice prosecuting for the same *crime*, but also the proscription of twice prosecuting on the basis of the same *factual contentions*, albeit for different crimes, at least after those facts have been judicially determined against the State. (Emphasis in original.)

393 F.Supp. at 1068;[13] accord United States v. Mespoulede, supra.[14]

---

[13] The district court ultimately allowed the second prosecution to go forward in the State court, but only after concluding that there were facts alleged in the second prosecution that were not determined at the first trial.

[14] "[O]nce a defendant has satisfied one jury [or judge] that he is not guilty of a crime, constitutionally-rooted considerations of fairness preclude the

■ This court believes that the instant case legally is indistinguishable from Triano, and not materially different from Ashe or Harris. As in Ashe and Harris, all crimes charged in this case and the previously tried traffic cases allegedly occurred at or near the same time and places. Moreover, the Government concedes that the "criminal" charges stem from the same incident as the traffic charges. The only important factual issue in dispute is the identity of the guilty party. In the pending case, the Government would like to bolster its proof by calling a police officer who did not testify at the first trial and who allegedly will testify that he saw the minor on the afternoon in question and that the minor's clothing matched that which was testified to by the lone identification witness at the first trial. The Government thus wishes to relitigate the issue of identity and attempts to do this by charging different crimes that are premised on the same factual contentions. This is precisely what the double jeopardy clause was designed to prevent—successive prosecutions to obtain a conviction. The reason for the clause was well stated by Mr. Justice Black:

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187–88 (1957). To permit the Government in the pending charges to again adduce evidence on the issue of identity is impermissibly to require the minor to "run the gantlet" a second time. Id. at 190.

---

Government from injecting *any issues* necessarily decided in his favor into a second trial for another offense." (Emphasis supplied.)
United States v. Mespoulede, supra, 597 F.2d at 334.

 Thus, the court must conclude that the Government has not met its burden of proof in showing that the pending action does not require the court to decide an ultimate fact that was adjudicated by the minor's acquittal of the traffic charges. See United States v. Inmon, 568 F.2d 326 (3d Cir. 1977).[15] Accordingly, the court finds that jeopardy attached to the former proceeding and that as to the instant charges the minor's motion to dismiss should be granted.

### ORDER

The court having rendered a Memorandum Opinion this date, in accordance with that opinion it is

ORDERED that the motion of the minor, Evan S., to dismiss be and hereby is granted and the complaint be and hereby is dismissed.

---

[15] In light of the Government's concession that both the traffic and "criminal" charges arise from the same incident, there is no need for the evidentiary hearing called for by Inmon, supra.