[Civ. No. 21184. Third Dist. Jan. 4, 1983.]

MILTON LAWRENCE WILLADSEN, Plaintiff and Appellant, v.
THE JUSTICE COURT FOR THE OROVILLE JUDICIAL DISTRICT OF
BUTTE COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Minasian, Minasian, Minasian, Spruance, Baber & Meith and M. Anthony Soares for Plaintiff and Appellant.

Thomas F. Olson and Jennifer Mellett von Nosler as Amici Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory

W. Baugher and Jana L. Tuton, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**SPARKS, J.**—In this appeal from denial of a petition for a writ of prohibition, plaintiff challenges a Fish and Game Department regulation designating all state bodies of water as subject to the provisions of Fish and Game Code section 1603. (All further statutory references are to sections of the Fish and Game Code.) He also challenges the arbitration provisions of section 1603. We reject those challenges and shall affirm the judgment.

Plaintiff faces a misdemeanor charge of violating section 1603 in justice court. His motion to dismiss on constitutional and other grounds was denied in the justice court, as was his petition for a writ of prohibition from the superior court. This appeal followed from that denial.

Section 1603, added in 1976, provides: "It is unlawful for any person to substantially divert or obstruct the natural flow or substantially change the bed, channel or bank of any river, stream or lake designated by the department, or use any material from the streambeds, without first notifying the department of such activity, except when the department has been notified pursuant to Section 1601 [requiring notice by governmental agencies]. The department within 30 days of receipt of such notice, or within the time determined by mutual written agreement, shall, when an existing fish or wildlife resource may be substantially adversely affected by such activity, notify the person of the existence of such fish and wildlife resource together with a description thereof, and shall submit to the person its proposals as to measures necessary to protect fish and wildlife. Upon a determination by the department of the necessity for onsite investigation or upon the request for an onsite investigation by the affected parties, the department shall notify the affected parties that it shall make onsite investigation of the activity and shall make such investigation before it shall propose any measure necessary to protect the fish and wildlife.

"Within 14 days of receipt of the department's proposals, the affected person shall notify the department in writing as to the acceptability of the proposals, except that this time may be extended by mutual agreement. If such proposals are not acceptable to the affected person, then that person shall so notify the department. Upon request the department shall meet with the affected person within seven days of receipt of such notification or such time as may be mutually agreed upon for the purpose of developing proposals which are acceptable to the department and the affected person. If mutual agreement is not reached at

such meeting a panel of arbitrators shall be established; provided, however, that the appointment of such panel may be deferred by mutual consent of the parties. The panel shall be established within seven days of such meeting and shall be composed of one representative of the department, one representative of the affected person, and a third person mutually agreed upon, or if no agreement can be reached, the third person shall be appointed in the manner provided by Section 1281.6 of the Code of Civil Procedure. The third person shall act as panel chairman. The panel shall have power to settle disagreements and make binding decisions regarding fish and wildlife modifications. Such arbitration shall be completed within 14 days from the day that the composition of the panel is established, unless the time is extended by mutual agreement. Expenses of the department representative are to be borne by the department, expenses of the representative of the person who diverts or obstructs the natural flow or changes the bed of any river, stream or lake, or uses any material from the streambeds shall be borne by such person; expenses of the chairman are to be paid one-half by each party.

"It is unlawful for any person to commence any activity affected by this section until the department has found it will not substantially adversely affect an existing fish or wildlife resource or until the department's proposals, or the decisions of a panel of arbitrators, have been incorporated into such projects. If the department fails to act within 30 days of the receipt of the notice, the person may commence such activity.

"It is unlawful for any person to engage in a project or activity affected by this section, unless such project or activity is conducted in accordance with the department's proposals or the decisions of the panel of arbitrators.

"With regard to any project which involves routine maintenance and operation of water supply, drainage, flood control, or waste treatment and disposal facilities, notice to and agreement with the department shall not be required subsequent to the initial notification and agreement unless the work as described in the agreement is substantially changed, or conditions affecting fish and wildlife resources substantially change, and such resources are adversely affected by the activity conducted under the agreement. This provision shall be applicable in any instance where notice to and agreement with the department have been attained prior to the effective date of this chapter.

"The provisions of this section shall not be applicable to emergency work necessary to protect life or property. Notification by the person performing such emergency work shall be made to the department within 14 days of commencement of such emergency work."

The Fish and Game Department's implementing regulation, effective January 18, 1977, reads: "For the purpose of implementing Sections 1601 and 1603 of the Fish and Game Code which requires [*sic*] submission to the department of general plans sufficient to indicate the nature of a project for construction by or on behalf of any person, governmental agency, state or local, and any public utility, of any project which will divert, obstruct or change the natural flow or bed of any river, stream or lake designated by the department, or will use material from the streambeds designated by the department, all rivers, streams, lakes, and streambeds in the State of California, including all rivers, streams and streambeds which may have intermittent flows of water, are hereby designated for such purpose." (Cal. Admin. Code, tit. 14, § 720.)

Records of the Fish and Game Department (Department) of which we take judicial notice on plaintiff's request, show plaintiff notified the Department on May 27, 1981, of his intention to reroute a stream for winter runoff. A Department representative inspected the site on June 16 and determined the project would affect "various game and nongame animals." The Department proposed several measures to protect the stream environment, including preservation of woody vegetation in the area. The proposed agreement is dated June 20, 1981. The citation issued to defendant, for "altering stream without an agreement," is dated June 16, the same day the Department's inspection was made.

I

Plaintiff's first argument is that the first sentence of section 1603 demonstrates an intent by the Legislature that some, but not all, state waterways be governed by the notification and approval requirements of the statute. He contends that the Department has exceeded its authority by designating *all* rivers, streams and lakes as subject to the requirements.[1] Noting that the Supreme Court has repeatedly "held that administrative regulations which exceed the scope of the enabling statute are invalid and have no force or life" (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 680 [170 Cal.Rptr. 484, 620 P.2d 1032]), plaintiff argues that the Department's implementing regulation is void. The argument is premised on a 1976 revision of chapter 6, division 2, of the Fish and Game Code. (Stats. 1976, ch. 603, §§ 1, 2, p. 1447.) In that revision, current section 1603 replaced former section 1602, which required "Any person who substantially diverts or obstructs the natural flow . . . of *any* river, stream, or lake," to notify the Department. (See Stats. 1970, ch. 1357, § 2, p. 2524; italics added.)

___

[1] Amicus Curiae, California Farm Bureau Federation, supports this argument. It asserts diversion of small streams is necessary from time to time to achieve the best use of agricultural land. We *do not doubt the truth of the assertion; we merely defer to* the Legislature's balancing of various interests in this area.

Plaintiff reads too much into the change in language. The legislative history of sections 1600 through 1603 belies his claim. Sections 1600 to 1602 were added to the code in 1961 as new chapter 6. (Stats. 1961, ch. 909, § 2, p. 2532.) Section 1600 then provided (as it does now): "The protection and conservation of the fish and wildlife resources of this State are hereby declared to be of utmost public interest. Fish and wildlife are the property of the people and provide a major contribution to the economy of the State as well as providing a significant part of the people's food supply and therefore their conservation is a proper responsibility of the State. This chapter is enacted to provide such conservation for these resources." Section 1601 required all governmental agencies to submit general plans for any project "which will divert, obstruct or change the natural flow or bed of any river, stream or lake *designated by the department.*" (*Ibid.*; italics added.) The Department was then to propose, and the submitting agency to consider, plan modifications to protect fish and game. (*Ibid.*) By regulation, the Department designated *all* state rivers, lakes and streams as subject to the provisions of section 1601. (Former Cal. Admin. Code, tit. 14, § 720.)[2] Section 1602 required "any person" to notify the Department of proposed changes in *any* river, stream or lake and to await the Department's recommendations before proceeding. (Stats. 1961, ch. 909, § 2, p. 2533.)

In 1970, the Legislature added strength to sections 1601 and 1602 by prohibiting an agency or individual from proceeding with a project affecting a river, stream or lake until an agreement was reached with the Department as to modifications necessary to protect fish and game. (Stats. 1970, ch. 1357, § 1, pp. 2522-2524.) Arbitration procedures were included in the statutes to facilitate resolution of disputes about the Department's requirements. (*Id.,* at pp. 2523-2524.) Violation of section 1602, either by failure to notify the Department of a project or by refusing to incorporate the Department's proposed project modifications or the decision of the arbitration panel into the project, became a misdemeanor. (See 57 Ops.Cal.Atty.Gen. 475, 476 (1974).)

Thus at the time of the adoption of the 1976 amendments, the Legislature was aware that the Department, when earlier directed by statute to designate rivers, streams and lakes for purposes of general plans, had responded by adopting a regulation designating "all rivers, streams, lakes and streambeds in the State of California." Consequently, the phrase "designated by the department" in this

---

[2]That former regulation read: "For the purpose of implementing Section 1601 of the Fish and Game Code which requires submission to the department of general plans sufficient to indicate the nature of a project for construction by, or on behalf of, any governmental agency, state or local, and any public utility, of any project which will divert, obstruct or change the natural flow or bed of any river, stream or lake designated by the department, or will use material from the streambeds designated by the department, all rivers, streams, lakes, and streambeds in the State of California, including all rivers, streams and streambeds which may have intermittent flows of water, are hereby designated for such purpose."

context had been administratively defined and the Legislature's reenactment of that construed phrase implicitly approved that construction.[3] The Attorney General contends that section 1603 enlarged, rather than constricted, the authority of the Department. We agree. Prior to the enactment of section 1603, the Department lacked authority to exempt any waterway from the notification and permit process because the former statute applied to "any river, stream, or lake." (Stats. 1970, ch. 1357, § 2, p. 2524.) In our view the addition of the phrase "designated by the department" in section 1603 was designed to serve two purposes. First, it casts the prohibition against alterations without Department approval in a parallel form for both public and private entities, a cosmetic change. Second, it gives the Department the option (unexercised thus far) of excluding waterways in which it has no interest. The language does not in any way, however, preclude the Department's current conclusion that all state waterways may contain fish and game resources to be preserved and encouraged.

Contrary to plaintiff's contention, the Department did not designate all waterways merely because a survey would be too costly. It rejected a "listing or identification by geographic area of *all* named and unnamed rivers, streams, and lakes including streambeds which may have intermittent flows of water" as an unwarranted, costly, and monumental task unworkable as an alternative to the then-proposed implementing regulation. (Cal. Fish and Game Commission, Statement of Purpose for Regulatory Action, April 1, 1981.)

■ Also contrary to plaintiff's argument, section 1603 is not void for lack of standards. "An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority to make *fundamental policy decisions.*" (*People* v. *Wright* (1982) 30 Cal.3d 705, 712 [180 Cal.Rptr. 196, 639 P.2d 267]; italics added.) Here the fundamental policy was dictated by statute. Section 1600, as we have noted, provides the general policy standard for conservation of fish and wildlife resources. "In order to be valid, a legislative standard for administrative action need be sufficiently definite only to provide directives of conduct for the administrative body in exercising its delegated administrative or regulatory powers." (*Katz* v. *Department of Motor Vehicles* (1973) 32 Cal.App.3d 679, 684 [108 Cal.Rptr. 424], citing *In re Marks* (1969) 71 Cal.2d 31, 51 [77 Cal.Rptr. 1, 453 P.2d 441].) Such a statutory standard is provided here. We find no constitutional infirmity in the Department's implementation of the statutory directive.

---

[3]Given this administrative construction, we note that the Legislature, when it desired the Department to specifically identify waterways for streamflow protection, recently mandated the director to "identify and list" the streams and watercourses in an "identification list." (Stats. 1982, ch. 1478, No. 11, West's Cal. Legis. Service, p. 7981; No. 8, Deering's Adm. Legis. Service, p. 255.) Significantly, the Legislature did not use the phrase "designated by the department."

Plaintiff's second contention of constitutional infirmity is an attack on the arbitration provision of section 1603. The attack fails because plaintiff has not shown the provisions apply to him. As noted, plaintiff was cited on June 16, 1981, six days before the date of the Department's proposed agreement. The arbitration provisions of section 1603 do not take effect unless and until the Department is notified its proposals are rejected and a request for arbitration is made. Section 1603 specifically provides "It is unlawful for any person to commence any activity affected by this section until the department has found it will not substantially adversely affect an existing fish or wildlife resource . . . ." This is the charge against defendant; it has no bearing on the arbitration procedure since it predates preparation of the agreement by the Department.

"The rule is well established, . . . that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; see also *Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215].)

The judgment is affirmed.

Regan, Acting P. J., and Carr, J., concurred.