**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**ROSIE WELLS, Defendant**

Criminal No. ST-08-CR-148
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
May 18, 2010

CLAUDE E. WALKER, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, USVI, *Attorney for Plaintiff.*

WILLIAM J. GLORE, ESQ., E. GEOFFREY WOLFE, ESQ., Dudley, Clark & Chan, LLP, St. Thomas, USVI, *Attorneys for Defendant.*

DUNSTON, *Judge*

## MEMORANDUM OPINION

(May 18, 2010)

Pending before the Court are Defendant's June 3, 2008, Motion to Dismiss[1] the Complaint, which charges two counts of practicing dentistry without a license, and Defendant's June 25, 2008, Motion for Judgment of Acquittal, raised following a combined hearing on the Motion to Dismiss and bench trial conducted on June 10, 2008. For the reasons stated below, the Court will grant Defendant's Motion for Judgment of Acquittal and deny Defendant's Motion to Dismiss as moot.

## FACTUAL AND PROCEDURAL HISTORY

Defendant Rosie Wells ("Wells") owns and operates the Sea Grape Spa in St. Thomas, Virgin Islands, where she offers a variety of cosmetic services including "teeth whitening", a service that is prominently featured in some of her advertising. Defendant testified at trial that in performing this service she follows a particular procedure using a commercial product known as the "WOWsmile System,"[2] which Wells selected for her business model after seeing it at a cosmetics trade show. In using the system, which is packaged in kit form, Defendant provides the client with a tray or mouth piece that the client places in his or her own mouth to form an imprint of the teeth, after which the client returns the tray to Wells. Next, Defendant places a premixed whitening gel in the tray, and the client places the tray back into his or her mouth. Wells then directs a special LED light towards the client's mouth to activate the tooth

---

[1] On June 12, 2008, the People of the Virgin Islands (the "People") filed an opposition and on June 16, 2008, Defendant filed a reply.

[2] See http://www.wowsmileinc.com.

whitening properties of the gel. After the tray remains in the client's mouth for a short while, the client again removes the tray. Defendant said that this process may be repeated in some instances. Significantly, Wells stated that she never represents herself to be a dentist and never places her fingers in the mouths of her clients.

Defendant is charged through a Complaint, which was signed before an Assistant Attorney General by Dr. Duanne W. Jones, Chairman of the Virgin Islands Board of Dentistry, with two counts of unlawful practice of dentistry in violation of V.I. CODE ANN. tit. 27 § 62,[3] V.I. R & Reg. tit. 64 § 64-9(a),[4] and V.I. R & Reg. tit. 64 § 64-3(aa)(1).[5] Count I alleges that Defendant "did practice dentistry by offering, undertaking, or indicating to the general public for compensation, a means or method to remove stains from teeth, without first obtaining a valid Virgin Islands dental license. . . ." Count II asserts that Defendant "did practice dentistry by acting as the proprietor or operator of a place where dental operations are performed, to wit: the Defendant offered services to the general public at Sea Grape Spa for compensation for teeth bleaching and teeth stain removal, without holding a valid Virgin Island dental license. . ." Neither the specific language of Count I charging that Defendant did "remove stains from teeth" nor that in Court II alleging that she offered "teeth bleaching and teeth stain removal" services to the general public is present in 27 V.I.C. § 61, the section of the Virgin Islands Code that defines dentistry. Instead, that wording is derived from the language of V.I. R & Reg. tit. 64 § 64-3(aa)(1). If convicted of practicing dentistry in the Virgin Islands without a valid license issued by the Virgin Island

---

[3] 27 V.I.C. § 62 states that "[i]t shall be unlawful for any person to practice or to offer to practice dentistry in the Virgin Islands, or to use any title, abbreviation, sign, card or device to indicate that such person is practicing dentistry, except as provided in this subchapter."

[4] V.I. R. & Reg. tit. 64 § 64-9(a) provides, in part, that "[n]o person may practice dentistry or dental hygiene in this territory except as provided in these rules and statute [sic] who does not hold a valid license issued by the Division."

[5] V.I. R. & Reg. tit. 64 § 64-3(aa) indicates: "Practice of Dentistry" means: (1) To offer, undertake or indicate in any way that a person or his agent will undertake by any means or method to diagnose, treat, operate or prescribe for any disease, pain, injury, deficiency, deformity or physical condition of the human teeth, alveolar process, gums, jaws, or adjacent structures in the maxillofacial region, or to take impressions or registrations to supply artificial teeth as substitutes for natural teeth or to take impressions of the teeth or jaws or to remove stains or concretions from teeth, or to correct or attempt to correct malpositions of teeth.

Commissioner of Health or of willfully violating the provisions of 27 V.I.C. § 72 or any rule or regulation promulgated thereunder, Defendant is subject to a potential penalty of a fine not to exceed Five hundred dollars ($500.00), imprisonment not to exceed six (6) months, or both.

## ANALYSIS

### Legal Standards

■ The issues before the Court require the application of basic concepts that have long been a part of the law of this jurisdiction. As early as the very first volume of the Virgin Islands Reports, in *The People v. Francis*, 1 V.I. 359, 368 (D.V.I. 1936), our courts have recognized that:

> ... there is a basic maxim of the common law — *nulla crimen sine lege* — there can be no crime without a law. No one can be guilty of a criminal offense unless he has acted so as to violate a valid law. An invalid law is legally nonexistent. It cannot be broken. It cannot be the basis for a criminal prosecution. To try a person for the violation of an invalid statute would be a denial of a basic principle of American law. Such a trial is forbidden by the Fifth Amendment to the Constitution of the United States.

■ Section 3 of the Revised Organic Act of 1954, 48 U.S.C. 1541, *et seq.*, extends the protection of the Due Process Clause of the Fifth Amendment to the Virgin Islands. *Government of the Virgin Islands v. Rodriguez*, 7 V.I. 360, 366 (D.V.I 1969). A statute that is so vague and indefinite, either on its face or as interpreted, as to permit within the scope of its language the punishment of incidents fairly within the protection of the Constitution is void. *Winters v. New York*, 333 U.S. 507, 509, 68 S. Ct. 665, 92 L. Ed. 840 (1948).

■ It is a question of statutory construction whether an offense is criminal. *Government in the Interest of Evan S.*, 16 V.I. 310, 315 (T. Ct. 1979) (citing *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 82 L. Ed. 917 (1938)). In order to be criminal, conduct must fall plainly and unmistakably within a penal statute. *Government of the Virgin Islands v. Latalladi*, 8 V.I. 137, 143 (Mun. Ct. 1970) ("It is axiomatic that statutes creating and defining crimes cannot be extended by intendment"). The rule of lenity requires that any ambiguity concerning the meaning of

241

a criminal statute must be resolved in favor of the criminal defendant. *Government of the Virgin Islands v. Knight*, 989 F.2d 619, 28 V.I. 249 (3d Cir. 1993) (citing *Crandon v. United States*, 494 U.S. 152, 168, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990)). ". . . [A] decision that construes the statute narrowly comports with established principles of construction for penal statutes — criminal statutes should be strictly construed, and penalties should not be imposed thereunder unless the statute plainly warrants it." *Government of the Virgin Islands v. Etienne*, 810 F. Supp. 659, 28 V.I. 121, 130 (D.V.I. 1992) (citing *United States v. Campos-Serrano*, 404 U.S. 293, 299, 92 S. Ct. 471, 30 L. Ed. 2d 457 (1971).

██ "No one may be required at peril of life, liberty or property to speculate as to the meaning of a penal statute; all are entitled to be informed as to what the statute commands or forbids." *Rodriguez, supra*, at 366-67 (citing *Lanzetta v. New Jersey*, 306 U.S. 451, 452, 59 S. Ct. 618, 83 L. Ed. 888 (1939)). As Judge Hoffman stated long ago under similar circumstances *in Latalladi, supra*, at 140:

> In approaching the problem before it the Court begins with one of the most basic concepts of American jurisprudence — that no person shall be adjudged guilty of criminal behavior unless his conduct falls within clearly defined activity which the legislature has declared criminal.
>
> . . .
>
> Before a person's acts may be categorized as criminal, society demands that these acts must first have been defined and made criminal by the legislature. Fundamental fairness and due process require that an individual have some notice or at least possible access to notice that an activity which he is contemplating is in fact criminal before he can be held to have committed a crime.

██ A defendant is deemed to have fair notice that conduct constitutes a criminal offense if the relevant statute defines the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *Trade Waste Mgmt. Assn., Inc. v. Hughey*, 780 F.2d 221, 235 (3d Cir. 1985).

## Source of the Charges

Turning to the statutory and regulatory provisions upon which this prosecution is based, the practice of dentistry was defined by the Virgin Islands Legislature in 27 V.I.C. § 61 as:

> any act, operation, or service which attempts or professes to perform, adjust, remove, treat, diagnose, construct, replace, directly or indirectly by any means or methods any impressions, tooth, teeth, jaws, restorations, furnishings, replacements, artificial substitutes, bands, crowns, bridges, appliances, or any structural restorations in the human oral cavity or its contiguous parts accomplished for compensation, personal profit, or gratuitously.

On December 30, 1994, the Governor approved a set of Rules and Regulations for the Virgin Islands Board of Dental Examiners (the "Board") that includes the Board's own definition of the practice of dentistry:

> (1) To offer, undertake or indicate in any way that a person or his agent will undertake by any means or method to diagnose, treat, operate, or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums, jaws, or adjacent structures in maxillofacial region, or to take impressions or registrations to supply artificial teeth as substitutes for natural teeth or to take impressions of the teeth or jaws or *to remove stains* (emphasis added) or concretions from the teeth, or to correct or attempt to correct malpositions of teeth;
>
> (2) Indicate or advertise by title, degree, or in any other way that one is a dentist; or
>
> (3) To act as a proprietor or operator of a place where dental operations are performed.
>
> (V.I. R & Reg. tit. 64 § 64-3(aa)) (emphasis added).

■ In determining whether the Board acted within its statutory authority in promulgating such a regulation, this Court examines the enabling statute. *See Three Rivers Center for Independent Living v. Housing Authority of City of Pittsburgh*, 382 F.3d 412, 424 (3d Cir. 2004). Where the language of the statute is clear and unambiguous, its plain meaning is conclusive. *Government of Virgin Islands v. Santiago*, 798 F.

Supp. 274, 279, 27 V.I. 232 (D.V.I. 1992); *see also Joseph v. People of Virgin Islands*, 50 V.I. 873, 883 (D.V.I. 2008) (words of a statute should be given their operative effect). It must be presumed that every word that was excluded from a statute was excluded for a reason. See Norman J. Singer, *Sutherland Statutory Construction*, § 46.6, at 231-48 (7th ed. 2007).

The powers and duties of the Board of Dental Examiners are delineated in 27 V.I.C. § 64, which authorizes the Board to:

> (1) recommend the issuance, suspension, revocation or reinstatement of licenses under this subchapter; and (2) adopt, amend, and repeal rules and regulations and bylaws not inconsistent with the provisions of this subchapter; and in accordance with generally accepted dental standards, *relating to the organization and operation of the Board, and the licensing and registration of dentists* under this subchapter. . . (emphasis added).

While the enabling statute clearly empowers the Board to determine who may be licensed to practice as a dentist,[6] it does not enable the Board to redefine what constitutes the practice of dentistry, at least in terms exceeding those embodied in 27 V.I.C. § 61 by the Legislature. 27 V.I.C. § 64 indicates that the Board may promulgate regulations that pertain to the organization and operation of the Board and the licensing and registration of dentists. In exercising the power conferred upon it, however, the Board is not authorized to add to, or subtract from, the substance of the criminal offense delineated in the law. See 3 V.I. Op. A.G. 299-300 (April 22, 1958) (stating that a regulation promulgated by the Board of Examiners that required an applicant for a dental or nursing license to reside in the Virgin Islands for six consecutive months immediately preceding the submission of his or her application was improper and that requirements beyond those defined by the Legislature "must be done by amendment to the law itself and not by regulation"). See also *Government of the Virgin Islands v. MT Retailers, Inc.*, 31 V.I. 62, 68 (T. Ct. 1995) ("[a]n agency may exercise only the powers granted to it by statute"); *Willadsen v. Justice Court*, 139 Cal. App. 3d 171, 188 Cal. Rptr. 488, 490-491 (Cal. Ct. App. 1983) ("administrative regulations

---

[6] Although the Board's authority in this regard is not unlimited, considering that the Commissioner of Health makes the final decision whether to issue a license to practice dentistry.

which exceed the scope of the enabling statute are invalid and have no force or life"). As a consequence, the Court determines that V.I. R & Reg. tit. 64 § 64-3(aa), which sets forth the Board's definition of the practice of dentistry, is void to the extent it seeks to expand the definition of the practice of dentistry contained in 27 V.I.C. § 61.

## Due Process

Given that the Complaint cites a void regulation as one of the primary bases for the charges against Defendant, the remaining portions of the Complaint must be examined to determine whether, excluding the void portions, the Complaint as a whole satisfies Defendant's right to due process. The Court undertakes this analysis even though the People's Opposition to Defendant's Motion for Judgment of Acquittal relies entirely on the definition of dentistry contained in V.I. R & Reg. tit. 64 § 64-3(aa).

■ A criminal charging document satisfies due process if it "(1) contains the elements of the offense charged; (2) provides the defendant adequate notice of the charges against which he must defend; and (3) protects against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense." *Allen v. Phelps*, 2009 U.S. Dist. LEXIS 56299, *9 (D. Del. 2009) citing *Russell v. United States*, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962). *See also Cannon v. U.S.*, 116 U.S. 55, 78-79, 6 S. Ct. 278, 29 L. Ed. 561 (1885) ("[t]he general rule is that in indictments for misdemeanors created by statute, it is sufficient to charge the offense in the words of the statute . . . [b]ut in all cases the offense must be set forth with clearness, and all necessary certainty to apprise the accused of the crime with which he stands charged").

Excluding reference to the void regulation, the Complaint indicates that that Defendant violated 27 V.I.C. § 62 and V.I. R & Reg. tit. 64 § 64-9(a). Section 64-9(a) prohibits a person from practicing dentistry or dental hygiene, or holding oneself out as practicing dentistry, without a valid license. While Defendant does advertise her stain removal services, the Court finds that the evidence presented by the People failed to establish that she represented herself to be practicing dentistry as that term is defined in 27 V.I.C. 61.

Had the People discussed this point, it could have been argued that the balance of the regulation, when viewed with 27 V.I.C. § 62, can be read

to notify Defendant that she was illegally practicing dentistry as defined in 27 V.I.C. § 61, especially since the Complaint makes reference to Defendant's tooth bleaching and stain removal services.

On the other hand, nowhere within 27 V.I.C. §§ 61 and 62 are stain removal and the bleaching of teeth specifically mentioned. Section 61 presents a comparatively complex statute for interpretation by a layman, prohibiting a variety of actions, including those that directly or indirectly "perform, adjust, remove, treat, diagnose, construct, or replace . . . impressions[7], tooth, teeth, jaws, restorations, furnishings, replacements, artificial substitutes, bands, crowns, bridges, appliances, or any structural restorations in the human oral cavity or its contiguous parts."

Given that the statute is multifaceted, and given that the Complaint does not charge the offenses in the words of 27 V.I.C. § 61, the Court must determine whether anyone comparing the statute and the Complaint would recognize that the "statute encompasses the conduct at issue". *Salinas v. United States*, 522 U.S. 52, 60, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997).

Considering the facts of this case, the only portion of 27 V.I.C. § 61 that could reasonably encompass the charged activity of tooth bleaching and stain removal is that which prohibits "treat[ing] teeth", directly or indirectly, without a license. But, it is questionable whether a reasonable person in Defendant's shoes would understand her actions in assisting customers to use a commercially available, over the counter product to whiten their teeth to constitute "treating" teeth in the sense of performing dentistry, given that the word "treat" is not statutorily defined and the context implies that the word is used in connection with a medical procedure.

A statute is not vague simply because a term is not defined, considering that the Legislature need not specifically define commonly

---

[7] The Court recognizes that it could be argued that Wells violated 27 V.I.C. 61 because use of the WOWsmile system entails her taking "impressions" of her clients' teeth. Despite the unchallenged evidence that Wells never places her hands in her clients' mouths and that the clients themselves put the trays into their own mouths to make the impressions, one could suggest that Wells is criminally "performing . . . indirectly . . . impressions". Even assuming such a tortured reading of the statute were permissible, however, the salient fact is that the Complaint makes no specific mention of impressions, but instead charges that she offered to the public "a means or method to remove stains from teeth" and "teeth bleaching and teeth stain removal", without holding a dental license.

understood terms in each statute it enacts. *See United States v. Cummings*, 1995 U.S. Dist. LEXIS 13083, *3 (E.D. Pa. 1995). *See also United States v. Atkinson*, 468 F. Supp. 834 (D. Wis. 1979) (language that is ordinary, nontechnical, and sufficiently precise withstands constitutional attack). However, if persons of common intelligence need to guess at a statute's meaning and differ as to the statute's application, the law is void for vagueness because it violates the notice requirements of due process. *Johnson v. Rafferty*, 1989 U.S. Dist. LEXIS 7016, *28 (D.N.J. 1989) citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). *See also Hunt v. Government of the Virgin Islands*, 46 V.I. 534, 537 (D.V.I. 2005) ("a criminal statute is impermissibly vague . . . [if] it fails to give fair notice of the conduct which would subject one to penal consequences and where it sets no standard for its enforcement").

█ This Court finds that the statute's use of the word "treat" does not put Defendant and others similarly situated on notice that tooth bleaching and stain removal without a dental license is criminal conduct. While the ordinary usage of the word "treat", as set forth in Merriam-Webster's New World Dictionary, includes several definitions, ranging from the broad notion of dealing with a subject to a more limited or technical definition of giving medical care,[8] the Court must conclude that one reading the statute would likely interpret it in the medical context. "Medical" is defined as relating to the science or practice of medicine or the treatment of disease. *Id.*, at 305. As commonly understood, dentistry would be viewed as a specialty of the practice of medicine that deals with the prevention, diagnosis, and treatment of diseases, injuries, and malformations of the teeth, jaws, and mouth. From the evidence at trial, the activities of Defendant are not encompassed within the purview of the statute.

█ Conversely, tooth whitening is a cosmetic procedure intended to affect the color but not the health of the teeth.[9] As was clear from the

---

[8] According to The Merriam-Webster New Dictionary, 2005 ed., at 523, the word "treat" encompasses the following: (1) negotiate, (2) to deal with a matter especially in writing, (3) to pay for the food or entertainment of, (4) to behave or act toward, (5) to regard in a specific manner, (6) to give medical or surgical care to, and (7) to subject to some action.

[9] While this Court notes that some cosmetic procedures such as hair styling, manicuring, and beauty culturing require licensing in the Virgin Islands pursuant to 27 V.I.C. 451, *et seq*,

evidence, numerous tooth whitening products may be obtained commercially in a number of ways. Rebecca Weiss, a former client of Defendant, testified that she obtained certain tooth whitening products similar to that utilized by Defendant from her dentist without acquiring a prescription or undergoing a dental examination. Similarly, Defendant pointed out that there are several other tooth whitening products on the market that can be acquired over the counter in groceries, variety stores, mall kiosks, department stores, and other retail establishments without a prescription and without consultation with a dentist, including Crest Whitening Tooth Paste, Crest White Strips Premium Plus, and Aquafresh White Trays, samples of all of which were introduced into evidence.[10] Moreover, the WOWsmile System, and several other products of a similar nature, can be purchased on line, either at the retail or wholesale level, without dental consultation. That products similar to the one being offered by Defendant are readily available in, and openly advertised by, grocery stores and other locations within this community where the proprietors have not been subjected to criminal prosecution clearly suggests that there is an impermissible danger of selective enforcement here. Given that it is not discernible from the statute and regulation whether the statute's use of the word "treat" includes or excludes cosmetic procedures, the statute is void for vagueness, both on its face and as applied to Defendant. Under the facts of this case, the Court cannot conclude that the statute defines the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. And, construing the statute and regulation strictly, the Court does not find that the People have proven beyond a reasonable doubt that the activities engaged in by Defendant fall within the purview of the statute.

The People argue that the "dental laws" are not intended to prohibit the commercial sale of tooth whitening products, claiming that the sellers of these products "are not undertaking to remove stains from the teeth of

---

Defendant has not been charged under that section of the Code, nor does Defendant's alleged criminal conduct involve those procedures.

[10] The WOWsmile System uses a 36% Carbamide Peroxide Gel as its whitening agent. In her trial exhibit list, Defendant also listed products utilizing several different concentrations of Carbamide Peroxide as the teeth whitening agent, although she ultimately did not offer into evidence the exhibits describing the products with these various concentrations of the compound.

another" and are not "offering a service". In light of the Court's interpretation of the statute and regulations, and given the facts of this case, this is a distinction without a difference.

Accordingly, the Defendant must be acquitted of all charges. An Order consistent with this Memorandum Opinion granting Defendant's Motion for Judgment of Acquittal and denying Defendant's Motion to Dismiss as moot will issue.