[No. A022241. First Dist., Div. Five. Mar. 25, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
LEONARD HARRIS et al., Defendants and Respondents.

1248

**1250**

COUNSEL

John K. Van de Kamp, Attorney General, Martin S. Kaye, Bruce M. Slavin and Donna B. Chew, Deputy Attorneys General, for Plaintiff and Appellant.

Jeff Brown, Public Defender, Peter G. Keane, Chief Attorney, Alberto C. Crespo and Grace Lidia Suarez, Deputy Public Defenders, and Marvin Rous for Defendants and Respondents.

OPINION

POCHÉ, J.*—The sole issue on this appeal by the People from an order setting aside the information against defendants Leonard Harris and Gloria

*Assigned by the Chairperson of the Judicial Council.

A. Malandaras is whether Penal Code section 872, subdivision (b)[1], is unconstitutional on its face. We conclude that the statute can survive this challenge and that the order must accordingly be reversed.

## I.

The sole witness at the preliminary examination conducted on March 10, 1983,[2] was Timothy Carey, who testified in effect that on January 21st he observed defendants break a window of a parked automobile and remove two boxes therefrom. At the conclusion of Mr. Carey's testimony, the prosecutor requested that the magistrate admit in evidence "pursuant to [section] 872 . . ., the statement in lieu of testimony" of John Kearney, the owner of the automobile. The attorneys for both defendants objected on the grounds that the statement was (1) hearsay; (2) failed to provide defendants with their "right of confrontation of witnesses"; and (3) because Kearney's statement "cannot be considered that of a victim" and consequently was "not in conformity with . . . Section 872." After their request to file a memorandum of points and authorities was granted, defendants asked the

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

Section 872 provides in pertinent part: ". . . (b) The finding of sufficient cause may be based in whole or in part upon hearsay evidence in the form of written statements of witnesses in lieu of testimony. At the time the defendant appears before the magistrate for arraignment, the prosecuting attorney may file with the court, and furnish a copy to the defendant, a statement made under penalty of perjury of the testimony of any witness which the prosecution wishes to introduce into evidence at the examination in lieu of the testimony of the witness. The statement shall be considered as evidence in the examination. This subdivision shall not apply if the witness is a victim of a crime against his or her person, or the testimony of the witness includes eyewitness identification of a defendant, or the prosecuting attorney has not filed with the court and furnished a copy to the defendant the statement of the testimony of the witness at the time of the arraignment or at least 10 court days prior to the date set for the preliminary hearing. For the purposes of this section an 'eyewitness' is any person who sees the perpetrator during the commission of the crime charged, whether or not he or she can identify the perpetrator. [¶] (c) Nothing in this section shall limit the right of the defendant to call any witness for examination at the preliminary hearing. If the witness called by the defendant is one whose statement of testimony was offered by the prosecuting attorney as provided in subdivision (b), the defendant shall have the right to cross-examine the witness as to all matters asserted in the statement. If the defendant makes reasonable efforts to secure the attendance of the witness but is unsuccessful in securing his or her attendance, the court shall grant a short continuance at the request of the defendant and shall require the prosecuting attorney to present the witness for cross-examination. If the prosecuting attorney fails to present the witness for cross-examination, the statement of the testimony of the witness shall not be considered as evidence in the examination."

Subdivisions (b) and (c) were added when section 872 was amended by an 1981 enactment which became effective on January 1, 1982. (Stats. 1981, ch. 1026, § 1, pp. 3941-3942.) Section 872 appears in chapter 7 ("Examination of the Case, and Discharge of the Defendant, or Holding Him to Answer," commencing with § 858) of title 3 ("Additional Provisions Regarding Criminal Procedure," commencing with § 777) of part 2 ("Criminal Procedure," commencing with § 681).

[2] Dates mentioned refer to the calendar year 1983.

magistrate to "exclude the statement on the grounds stated in the memorandum and oral arguments." The magistrate, noting that this matter "came out of the blue today," then took it under submission.

On March 14, the magistrate overruled defendants' objections and denied their motion to exclude the statement because "[t]he Legislature in its wisdom has allowed this particular testimony to be admissible at a preliminary hearing . . . ." Defendants were thereupon ordered held to answer in the superior court on a charge of violating section 459.

Defendants were jointly charged in an information filed on March 25 with a violation of section 459, in that on January 21 they did "willfully and unlawfully enter a motor vehicle, to-wit: [a] 1979 Ford, Nevada License No. WOV 568, the property of John Kearney, the doors of said motor vehicle being locked, with the intent to commit larceny." Arraigned three days later, each defendant entered a plea of not guilty.

On April 4th and 8th, defendants noticed separate motions for an order setting aside the information pursuant to section 995. Attached as exhibits A and B, respectively, were copies of Kearney's statement[3] and the memorandum of points and authorities filed at the preliminary examination and

---

[3]Kearney's statement appears as a three-page form ("Form 481-C") with blank spaces into which pertinent information was inserted. With certain editorial changes, and emphasizing the typewritten material inserted, we quote it as follows:

"STATEMENT IN LIEU OF TESTIMONY PURSUANT TO PENAL CODE SECTION 872(b)

"My name is John Robert Kearney. . . . I plan to leave San Francisco on January 23, 1983, and do not plan to return.

"On January 20, 1983, at 2:00 P.M., I came to CP/M 83 in San Francisco. I had a vehicle with me. That vehicle is [a] 1979 Ford (Make) Mustang (Model) silver grey (Color) WOV 568 Nevada (License) 9 ROSF164680 (VIN). This car belongs to me. . . . I used this vehicle as transportation for the trip. I left the vehicle locked at 8:00P.M., on 1-21-83. The windows were closed.

"I returned to the area where I had left my car earlier. I observed a police car parked behind my vehicle with a Sanyo MBC 1000 in the trunk. I saw the right hand passenger window broken and the computer out of the back of the car. The following property was taken and [the] window broken without my permission: 1 Sanyo MBC 1000 Computer. The value of this property is $1995.00. This property was located in [the] hatchback portion of the car prior to the incident described above.

"I gave no one permission to either break the window and take property from my vehicle. I called the police to report this incident on 1-21-83. I have seen my vehicle since the incident. I first saw it after the incident on 1-21-83 or early 1-22-83 at 12:30 A.M., 650 Mission Street, S[an] F[rancisco]. I noticed the following things were different about my vehicle: broken window and missing computer. I noticed the following things were in my vehicle which were not there prior to the incident: shattered glass. Any other further observations: police car behind my vehicle.

"I declare the foregoing to be true and correct under penalty of perjury.

"Executed on this 22 day of Feb., 1983, in Washoe County, Nevada.

"John Robert Kearney [signature]
"DECLARANT"

The statement was witnessed by a Notary Public of the State of Nevada.

considered by the magistrate. As pertinent here, the motions were made on the ground that defendants had been "committed without reasonable or probable cause" (see § 995, subd. (a)2(B)) in that "the written statement in lieu of testimony should not have been admitted."[4] Admission of the statement was challenged on "confrontation clause grounds" and because "the attempt to lighten the prosecution's burden [of proof] violates the accused's rights against self-incrimination."[5] The confrontation argument was developed at length in the memorandum (exhibit B), which defendants incorporated by reference in their moving papers.

The trial court conducted a hearing on the motions on April 14. During the course of oral arguments, the court advised the prosecutor of the reasons for its ruling in these terms: "I have to grant the 995, the witness wasn't there. . . . [T]here is no question you followed the statute . . . . What right does the Legislature have to say . . . you can submit a preliminary examination on partially hearsay testimony and if they object to the hearsay they have to demand of you that you produce the witness. . . . [D]efendants were not afforded the right of cross-examination . . . . [T]his statute places the burden upon them to make a demand upon you to produce the witness. And I think that is your responsibility. . . . I'm granting it on the basis of my believe [*sic*: belief] that 872 B is unconstitutional. . . . It is granted, but it is only granted as to the [un]constitutionality of 872 B." The following day the People filed a timely notice of appeal.[6]

---

[4]Additional grounds for the motion were (1) that Malandaras had been arrested without probable cause, thereby requiring suppression of Timothy Carey's in-court identification of her, and (2) that because Kearney's statement had not been formally received in evidence by the magistrate "there is no evidence as to the unlawfulness of the entry, . . . or as to the auto having been previously locked, both elements of an auto burglary."

When the motion was subsequently decided, the trial court denied it with regard to the first additional ground; granted the prosecution's motion to treat the failure to have the statement formally received in evidence as a "minor error of omission . . . or technical defect" remediable by the trial court pursuant to section 995a, subdivision (b)(1); and thereupon denied the motion as to the second additional ground. Neither the People nor defendants in their briefs on this appeal raise any challenge to either of the trial court's rulings with respect to the additional grounds.

[5]As will be shown, this argument implicates several constitutional provisions. In her moving papers, however, Malandaras devoted almost exclusive attention to demonstrating that the admission of Kearney's written statement violated her constitutional right of confrontation. Her invocation of other constitutional guarantees were either perfunctory or dependent upon inference.

[6]In their notice the People appeal "from the order granting the 995 Penal Code motion as to . . . the . . . information . . . entered . . . on the 15th day of April." No such order with this date appears in the record on appeal. In response to an inquiry from this court, the clerk of the superior court advised that no such order can be found in the records of that court. The record does include the following minute order made by the superior court on April 14th: "The Court grants defendant's Motion to Set Aside (995 P.C.)." In accordance with the rule requiring that a notice of appeal be liberally construed in favor of its sufficiency (see Cal. Rules of Court, rule 1(a)), we construe the People's notice as taking an appeal from the minute order of April 14th. That order suffices as an order setting aside the infor-

## II.

The People's sole contention on this appeal is that the trial court erred in granting defendants' motion to set aside the information because section 872, subdivisions (b) and (c), is constitutional on its face. Before proceeding to the merits of this contention, we deem it advisable to address a few comments as to its scope.

Section 872 details a procedure whereby a written statement may be used as substantive evidence in lieu of testimony at a preliminary examination. Subdivision (b) specifies the circumstances in which such a statement may be used by the prosecution. Subdivision (c) deals with rights and duties of the defense if the prosecution attempts to utilize the provisions of subdivision (b). (See fn. 1, *ante.*) The two subdivisions thus pertain to opposite concerns of the adversaries in a particular situation.

All of the parties have treated the constitutionality of subdivisions (b) *and* (c) as being at issue on this appeal. It is apparent from their moving papers that defendants were indeed challenging both subdivisions. But as shown by its remarks quoted above, the trial court decided only "that 872 B is unconstitutional" at the time it granted defendants' motion. It is nevertheless clear from the court's further remarks concerning the necessity of a "demand" for the declarant by the defense that subdivision (c) was at least considered by the trial court. We agree with the trial court that the constitutionality of subdivision (b) cannot be determined without reference to subdivision (c). We shall therefore invoke and apply the cardinal rule of statutory construction that all parts of a statute must be read and considered as a whole. (See *In re Ricky H.* (1981) 30 Cal.3d 176, 187 [178 Cal.Rptr. 324, 636 P.2d 13]; *In re Bandmann* (1958) 51 Cal.2d 388, 393 [333 P.2d 339]; *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 232 [273 P.2d 5]; *People* v. *Trieber* (1946) 28 Cal.2d 657, 663 [171 P.2d 1]; *People* v. *Moroney* (1944) 24 Cal.2d 638, 642 [150 P.2d 888]; see also Code Civ. Proc., § 1858; 2A Sutherland, Statutory Construction (Sands 4th ed. 1984) § 46.05, p. 90.) This is an intrastatute variant on the familiar rule of construing statutes which are *in pari materia.* (See *People* v. *Caudillo* (1978) 21 Cal.3d 562, 585 [146 Cal.Rptr. 859, 580 P.2d 274]; *People* v. *Chevron Chemical Co.* (1983) 143 Cal.App.3d 50, 54 [191 Cal.Rptr. 537].)

Next, it is a familiar rule of practice that courts will decide constitutional issues only if absolutely necessary and other nonconstitutional grounds for

---

mation, an order from which the people may appeal pursuant to section 1238, subdivision (a)(1). (See *People* v. *Hall* (1971) 3 Cal.3d 992, 999 [92 Cal.Rptr. 304, 479 P.2d 664], where the Supreme Court considered an appeal by the People from an "order granting the motion setting aside the information.")

disposing of a case are not available. (See *People* v. *Green* (1980) 27 Cal.3d 1, 50 [164 Cal.Rptr. 1, 609 P.2d 468]; *People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000]; *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 66 [195 P.2d 1]; *Fullerton Union High School Dist.* v. *Riles* (1983) 139 Cal.App.3d 369, 384 [188 Cal.Rptr. 897].) This rule cannot be applied in this case because there is no nonconstitutional ground in support of defendants' motion which was accepted by the trial court. As previously mentioned, the two nonconstitutional arguments urged by defendants were either rejected or mooted by the trial court's rulings, and neither has survived to this appeal. (See fn. 4, *ante.*) There is consequently no alternative ground for disposition and the constitutional issue must necessarily be reached.[7]

Our final preliminary comment pertains to the scope of our inquiry. The argument made by defendants, both in the trial court and on this appeal, is that section 872, subdivisions (b) and (c), is unconstitutional *on its face.* The nature of this argument has important consequences regarding the showing required before the trial court's order may be upheld upon the basis specified by that court. ■ " 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' " (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]; accord *In re Ricky H.* (1970) 2 Cal.3d 513, 519 [86 Cal.Rptr. 76, 468 P.2d 204]; *People* v. *Poggi* (1980) 107 Cal.App.3d 581, 589 [165 Cal.Rptr. 758].) ■ When a statute is attacked as unconstitutional on its face, the attacker "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute"; instead, the challenger "must demonstrate that the act's provisions inevitably pose a *present* total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215] [original italics deleted, italics added]; see *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 674 [114 Cal.Rptr. 345, 522 P.2d 1345]; 1 Sutherland, Statutory Construction, *op. cit. supra,* § 2.06, at p. 22.) The corollary of this burden is that if this court can conceive of a situation in which section 872, subdivisions (b) and (c), could be applied without entailing an inevi-

---

[7]It is clear from the reporter's transcript of the hearing conducted on defendants' motions that the trial court's rulings on the other grounds were made with a clear intent to require resolution of the constitutional issue by a reviewing court. The trial court stated: "[I]nasmuch as we want clarification from the appellate court, . . . I don't want the appellate court to go off in this case without meeting the issue that I have raised head on. . . . I want to be sure it is clear so that the appellate court doesn't have any questions open, I don't want the appellate court to go up on any other collateral issues."

table collision with and transgression of constitutional provisions, the statute will prevail over defendants' challenge.

The attack mounted against section 872 by defendants involves three constitutional rights and privileges. The lines of division between these rights, as defendants perceive and develop them, are blurred and to some extent are overlapping. Insofar as the separate identities of these rights can be discerned, we shall examine each in turn.

### *Right of Confrontation*

This is the primary constitutional right which defendants claim is infringed by section 872. ■ The right of a defendant in a criminal prosecution to confront the witnesses against him is guaranteed by the Constitutions of California and the United States. (Cal. Const., art. I, § 15; U.S. Const., 6th Amend.) The federal provision has been incorporated within the concept of due process which is obligatory upon the states. (See *Davis* v. *Alaska* (1974) 415 U.S. 308, 315 [39 L.Ed.2d 347, 353, 94 S.Ct. 1105]; *Brookhart* v. *Janis* (1966) 384 U.S. 1, 3-4 [16 L.Ed.2d 314, 316-317, 86 S.Ct. 1245]; *Pointer* v. *Texas* (1965) 380 U.S. 400, 403 [13 L.Ed.2d 923, 925, 85 S.Ct. 1065].) A defendant's right of confrontation is applicable to all critical stages of a criminal prosecution, including the preliminary examination. (See §§ 686, 865; *Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 667 [94 Cal.Rptr. 289, 483 P.2d 1241]; *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 875 [59 Cal.Rptr. 440, 428 P.2d 304]; *Herbert* v. *Superior Court* (1981) 117 Cal.App.3d 661, 666 [172 Cal.Rptr. 850, 19 A.L.R.4th 1276]; *Gallaher* v. *Superior Court* (1980) 103 Cal.App.3d 666, 671 [162 Cal.Rptr. 389].)

■ ■ ■ ■ The People contend that section 872 is constitutional in that it "effects no changes in normal preliminary examination procedure," is "merely an evidentiary" statute which expressly provides that "a defendant has the choice of requiring the attendance of the witness" for cross-examination, and that no violation of confrontation rights occurs.[8] Defend-

---

[8]The People also contend in effect that defendants waived their rights of confrontation by failing to take any measures to use the procedures of section 872, subdivision (c), (see fn. 1, *ante*) to secure Kearney's attendance at the preliminary examination. We disregard this argument for several reasons. First, it was made for the first time in the reply brief without an explanation for failing to raise this issue earlier, a disfavored practice. (See *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 381 [177 Cal.Rptr. 380]; *Sinclair* v. *Aquarius Electronics, Inc.* (1974) 42 Cal.App.3d 216, 229 [116 Cal.Rptr. 654]; *People* ex rel. *Dept. of Public Works* v. *Garden Grove Farms* (1965) 231 Cal.App.2d 666, 670 [42 Cal.Rptr. 118].) Second, defendants are not required to comply with the statute before being allowed to challenge it. (See *Staub* v. *City of Baxley* (1958) 355 U.S. 313, 319 [2 L.Ed.2d 302, 309, 78 S.Ct. 277]; *Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 1017 [176 Cal.Rptr. 569]; *Aaron* v. *Municipal Court* (1977) 73 Cal.App.3d 596, 599, fn. 2 [140 Cal.Rptr. 849];

ants argue that their confrontation rights were denied them because Kearney was not available at the preliminary examination, with the result that they "had no opportunity to cross-examine the victim, nor did the magistrate have an opportunity to observe his demeanor." Although both of these contentions suffer from imperfections, the People's argument retains sufficient potency to preserve section 872 from defendants' attack.

■ Despite its undoubted importance, the right of confrontation is not absolute. (*People* v. *Enriquez* (1977) 19 Cal.3d 221, 235 [137 Cal.Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73]; *Herbert* v. *Superior Court, supra,* 117 Cal.App.3d at p. 667; *People* v. *Johnson* (1974) 39 Cal.App.3d 749, 754 [114 Cal.Rptr. 545].) It may be lost or waived in a variety of ways. (See *In re Hannie* (1970) 3 Cal.3d 520, 526 [90 Cal.Rptr. 742, 476 P.2d 110]; *In re Mosley* (1970) 1 Cal.3d 913, 921 [83 Cal.Rptr. 809, 464 P.2d 473]; *Herbert* v. *Superior Court, supra,* at pp. 667-668.) Much controversy has concerned the compatibility of the constitutional requirements of confrontation with the application of exceptions to the hearsay rule. (See *Ohio* v. *Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531]; *Dutton* v. *Evans* (1970) 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210]; *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930]; *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]; *People* v. *Winson* (1981) 29 Cal.3d 711 [175 Cal.Rptr. 621, 631 P.2d 55], cert. den., 455 U.S. 975 [71 L.Ed.2d 688, 102 S.Ct. 1485]; *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401]; *People* v. *Orduno* (1978) 80 Cal.App.3d 738 [145 Cal.Rptr. 806]; *People* v. *Johnson, supra,* 39 Cal.App.3d 749; see also Read, *The New Confrontation-Hearsay Dilemma* (1972) 45 So.Cal.L.Rev. 1.) The decisions on this subject—which provide a fruitful source of analytical analogy—focus not upon abstract arguments but upon a scrutiny of the factual circumstances present in each case, in the belief that individualized adjudication will best promote the goal of confrontation, i.e., "to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact (has) a satisfactory basis for evaluating the truth of the prior statement.'" (*Dutton* v. *Evans, supra,* at p. 89 [27 L.Ed.2d at p. 227]; see *Ohio* v. *Roberts, supra,* at pp. 63-66, 70-77 [65 L.Ed.2d at pp. 605-607, 610-614]; *California* v. *Green, supra,* at pp. 158-164 [26 L.Ed.2d at pp. 497-500]; *People* v. *Winson, supra,* at pp. 717-719; *People* v. *Enriquez, supra,* at

cf. *Del Mar Canning Co.* v. *Payne* (1946) 29 Cal.2d 380, 384 [175 P.2d 231].) Finally, given the current exacting standards for a waiver of confrontation rights (see *Boykin* v. *Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709]; *In re Yurko* (1974) 10 Cal.3d 857, 863 [112 Cal.Rptr. 513, 519 P.2d 561]; *In re Tahl* (1969) 1 Cal.3d 122, 130-131 [81 Cal.Rptr. 577, 460 P.2d 449]; cf. *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]) and defendants' repeated attacks upon section 872 virtually from the start of this case, we perceive no rational basis for finding waiver.

pp. 235-237; *People* v. *Jones* (1984) 155 Cal.App.3d 653, 662-664 [202 Cal.Rptr. 289]; *Herbert* v. *Superior Court, supra,* 117 Cal.App.3d 661.) No such record exists in this case, a deficiency to which we will return when we consider defendants' due process argument.

■ The opportunity to cross-examine witnesses is a primary interest secured by the right of confrontation. (*Douglas* v. *Alabama* (1965) 380 U.S. 415, 418 [13 L.Ed.2d 934, 937, 85 S.Ct. 1074]; *People* v. *Murphy* (1963) 59 Cal.2d 818, 830 [31 Cal.Rptr. 306, 382 P.2d 346]; *Herbert* v. *Superior Court, supra,* 117 Cal.App.3d at p. 667.) Confrontation undoubtedly serves other values, including the chance to observe and evaluate the witness's demeanor. (See *Mattox* v. *United States* (1895) 156 U.S. 237, 242-244 [39 L.Ed. 409, 410-411, 15 S.Ct. 337]; *United States* v. *Benfield* (8th Cir. 1979) 593 F.2d 815, 821; *Herbert* v. *Superior Court, supra,* at pp. 667, 669-671; Read, *op. cit. supra,* 45 So.Cal.L.Rev. 1, at pp. 15-17, 27, 49.) Nevertheless, a group of decisions by the Supreme Courts of California and the United States dealing with the constitutionality of one of the exceptions to the hearsay rule establishes that for present purposes it is the opportunity for cross-examination that is the controlling factor in determining whether confrontation has been denied.

The validity of Evidence Code section 1235, which allows the introduction of a witness's prior inconsistent statement, was first considered in *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], cert. den., 393 U.S. 1051 [21 L.Ed.2d 693, 89 S.Ct. 679]. The defendant in that case was accused of committing incest with his daughter. After the daughter and the defendant's wife denied at the trial that any improper sexual activities occurred, the prosecutor was allowed to introduce extrajudicial statements and prior testimony to the contrary given by the daughter and the wife before the grand jury. On the defendant's appeal from the ensuing judgment of conviction, the Supreme Court of California unanimously reversed, holding that section 1235 could not be constitutionally applied in these circumstances. Justice Mosk, the author of *Johnson,* recently explained its reasoning: "[We] posited that a *constitutionally adequate* opportunity to cross-examine his accusers is an essential component of a defendant's right to confrontation. The defendant in *Johnson,* of course, had had no opportunity whatever to cross-examine the grand jury testimony and the extrajudicial statements against him at the time they were given; his sole confrontation with the witnesses was at the trial itself." (*In re Johnny G.* (1979) 25 Cal.3d 543, 551-552 [159 Cal.Rptr. 180, 601 P.2d 196] (conc. opn. of Mosk, J.) [original italics].)

The court in *Johnson* explained the value of contemporaneous cross-examination in these terms: " 'The chief merit of cross examination is not that

at some *future* time it gives the party opponent the right to dissect adverse testimony. Its principal virtue is in its *immediate* application of the testing process. Its strokes fall while the iron is hot. False testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestion of others, whose interest may be, and often is, to maintain the falsehood rather than truth.'" (*People* v. *Johnson, supra,* 68 Cal.2d at p. 656 [original italics].)

The *Johnson* holding was reiterated the following year in *People* v. *Green* (1969) 70 Cal.2d 654 [75 Cal.Rptr. 782, 451 P.2d 422]. There also, a key witness for the prosecution had become "markedly evasive and uncooperative" at the trial, which diminished the effect of earlier damaging testimony given at the preliminary examination. (*Id.,* at p. 657.) The prosecutor was allowed to introduce extrinsic evidence of that earlier testimony, and the defendant was convicted. The California Supreme Court reversed, holding that application of section 1235 in these circumstances denied the defendant his constitutional right of confrontation. It rejected a contention by the Attorney General that *Johnson* was distinguishable because the *Green* witness had been subject to cross-examination at the trial: "'To assert that the dangers of hearsay are "largely nonexistent" when the declarant can be cross-examined at some later date, or to urge that such cross-examination puts the later trier of fact in "as good a position" to judge the truth of the out-of-court statement as it is to judge contemporary trial testimony, is to disregard the critical importance of *timely* cross-examination.' (Italics in original.) (*People* v. *Johnson* (1968) *supra,* 68 Cal.2d 646, 655.) Belated cross-examination before the trial court, such as was available to defendant in the instant case, is not an adequate substitute for the right to cross-examination contemporaneous with the original testimony before a different tribunal." (70 Cal.2d at p. 659.)

The court then reviewed decisions by the United States Supreme Court and discerned in them support for the conclusion that Green had been denied effective exercise of his confrontation right: "'These rulings emphasize the high court's belief in the importance of ensuring the defendant's right to conduct his cross-examination before a *contemporaneous* trier of fact, i.e., before the same trier who sits in judgment on the truth of the witness' direct testimony as it is spoken from the stand.' (Italics in original.) (*People* v. *Johnson* (1968) *supra,* 68 Cal.2d 646, 659, 660.) We reiterate that the 'contemporaneous' cross-examination which alone, in the absence of a legal showing of necessity, can be considered fully effective and constitutionally adequate is cross-examination at the *same time* as the direct testimony is given, before the *same trier* as must ultimately pass on the credibility of the witness and the weight of that testimony. In short, cross-examination neither

may be *nunc pro tunc* nor may it be *tunc pro nunc.*" (70 Cal.2d at p. 661 [fn. omitted].)

That judgment was vacated, and the rationale of *People* v. *Johnson* was rejected, by the United States Supreme Court in *California* v. *Green, supra,* 399 U.S. 149 [26 L.Ed.2d 489]. The court's general holding was that the federal right of confrontation is not violated by the admission of a prior extrajudicial statement made by a declarant who is subject to cross-examination either at the time the statement is made (i.e., at the preliminary examination) or at trial. In the process of determining that the California Supreme Court's *Johnson* and *Green* rulings that Evidence Code section 1235 was unconstitutional were erroneous, the federal court's disagreement with the California court's valuation of contemporaneous cross-examination was stark: "We cannot share the California Supreme Court's view that belated cross-examination can never serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement." (*Id.,* at p. 159 [26 L.Ed.2d at p. 497].) Moreover, the court discounted "as a constitutional matter the fact that the jury at trial is foreclosed from viewing the declarant's demeanor when he first made his out-of-court statement." (*Id.,* at p. 160 [26 L.Ed.2d at p. 498].) The court explained: "The witness who now relates a different story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement. . . . The defendant's confrontation rights are not violated, even though some demeanor evidence that would have been relevant in resolving this credibility issue is forever lost. [¶] It may be true that a jury would be in a better position to evaluate the truth of the prior statement if it could somehow be whisked magically back in time to witness a gruelling cross-examination of the declarant as he first gives his statement. But the question as we see it must be not whether one can somehow imagine the jury in 'a better position,' but whether subsequent cross-examination at the defendant's trial will still afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. On that issue, neither evidence nor reason convinces us that contemporaneous cross-examination before the ultimate trier of fact is so much more effective than subsequent examination that it must be made the touchstone of the Confrontation Clause." (*Id.,* at pp. 160-161 [26 L.Ed.2d at pp. 498-499] [fn. omitted].)

Particularly pertinent for present purposes is the court's discussion of why the prior statement of the witness (named Porter) would have been admissible at trial by reason of earlier events: "We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent [Green] had

an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel . . .; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal[] equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him." (*California* v. *Green, supra,* 399 U.S. at p. 165 [26 L.Ed.2d at p. 501].)[9]

The final episode in this sequence is the California Supreme Court's decision in *People* v. *Chavez, supra,* 26 Cal.3d 334. There, the only witness who could testify as to the defendant having fired a rifle recanted earlier testimony. After this witness denied at the trial that the defendant was the gunman, the prosecutor was allowed to introduce evidence of a statement made by the witness at the preliminary examination to the effect that the defendant had fired the shots in question. The Supreme Court held that no violation of the defendant's state constitutional confrontation right had occurred.

The defendant asked that the *Johnson* and *Green* holdings of the California court (that Evidence Code section 1235 denied the right of confrontation) should be reinstated as a matter of state constitutional law; the issue, as stated by the court, was whether "even though a defendant has confronted and been afforded the opportunity to cross-examine the witnesses against him at trial, the state confrontation clause should be interpreted to bar the introduction—or at least the substantive use—of any prior statement of an appearing witness not spoken from the witness stand." (26 Cal.3d at pp. 353, 356.) After an extensive review of authorities, the court concluded that the defendant's position was untenable: "We see no reason to depart from this traditional approach to the California right of confrontation in the instant case. Defendant asserts that his right to cross-examine the witness as to his prior statements constitutionally failed because the cross-examination did not take place contemporaneously with the witness' prior statements. Such 'delay' in cross-examination, however, as the Supreme Court's opinion in *California* v. *Green* explained, does not necessarily impair a defendant's ability to attack the witness' prior statements. . . . Defendant retains the opportunity to question the declarant as to the circumstances

---

[9]Upon remand from the United States Supreme Court, the California Supreme Court affirmed Green's judgment of conviction. (*People* v. *Green* (1971) 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998].)

surrounding the prior statements . . . . Through such questioning, the defendant can test the credibility of the witness' statements on the witness stand before the trier of fact. In our view, *the California confrontation clause requires no more.* [¶] The right to confront witnesses is unquestionably a most important and fundamental right. The principal objective of this constitutional right, however, is to assure that evidence presented by the prosecution is subjected to the cleansing process of cross-examination at trial. We would extend the right of confrontation beyond its well-established meaning if we were to interpret it to preclude a jury from considering an out-of-court statement of a witness who has in fact been subjected to the powerful probe of cross-examination at trial. Accordingly, we conclude that the admission of [the witness'] prior inconsistent statements did not violate article I, section 15 of the California Constitution." (*Id.,* at pp. 360-361 [fn. omitted, italics added].)

In the case at hand, the essence of defendants' argument that "they had no opportunity to cross-examine the victim, nor did the magistrate have an opportunity to observe his demeanor" is an attempt to exhume the contemporaneous cross-examination controversy. This argument, although accepted in *People* v. *Johnson* and *People* v. *Green,* was authoritatively buried in *California* v. *Green* and *People* v. *Chavez.* Defendants cannot now disinter it. ■ The latter pair of decisions establishes that no violation of the confrontation clauses of either the United States or the California Constitutions occurs if a declarant is available for cross-examination regarding his prior extrajudicial statement. Cross-examination alone provides "the trier of fact a satisfactory basis for evaluating the truth of the prior statement . . . even though some demeanor evidence that would have been relevant in resolving this credibility issue is forever lost." (*California* v. *Green, supra,* 399 U.S. at pp. 160-161 [26 L.Ed.2d at p. 498]; see *Dutton* v. *Evans, supra,* 400 U.S. at pp. 88-89 [27 L.Ed.2d at pp. 226-227]; *People* v. *Chavez, supra,* 26 Cal.3d at pp. 360-361.)

■ Within the context of this case, these authorities establish that a defendant's confrontational rights under both state and federal Constitutions suffer no improper impairment if he is given an opportunity to cross-examine the declarant of an extrajudicial statement at the preliminary examination. Cross-examination suffices because it provides the trier of fact, i.e., the magistrate, the opportunity to observe the declarant's demeanor and to assess the credibility of his prior hearsay utterance. Subdivision (c) of section 872 (see fn. 1, *ante*) expressly provides that a written statement in lieu of testimony cannot be admitted as substantive evidence at a preliminary examination if the defendant's desire for cross-examination at that proceeding cannot be satisfied. Moreover, each of the circumstances identified by the United States Supreme Court as aiding the trier of fact would be present

at a preliminary examination where a declarant is cross-examined about his written statement: the declarant would be under oath (Evid. Code, § 710), the defendant has the right to be represented by counsel (see §§ 858-860), and the proceedings would be conducted "before a judicial tribunal[] equipped to provide a judicial record of the hearings." (See *California* v. *Green, supra,* 399 U.S. 149, at p. 165 [26 L.Ed.2d at p. 501]; see also § 869.)

It is unimportant for purposes of this point of our analysis that defendants made no attempt to utilize this procedure. (Cf. *People* v. *Green, supra,* 3 Cal.3d at p. 990; *People* v. *O'Quinn* (1980) 109 Cal.App.3d 219, 228-229 [167 Cal.Rptr. 141].) Section 872, by establishing a means whereby an opportunity for cross-examination is guaranteed, satisfies the confrontation requirements of the Constitutions of both the United States and California. (See *California* v. *Green, supra,* 399 U.S. at pp. 153-164 [26 L.Ed.2d at pp. 494-500]; *People* v. *Chavez, supra,* 26 Cal.3d at pp. 349-361.) Accordingly, section 872 is not, on its face, an unconstitutional abridgement of defendants' rights of confrontation.

### Right to Due Process

The trial court, in addition to ruling that section 872 violated defendants' confrontation rights, apparently concluded that the statute suffered from a further constitutional infirmity in that it "places the burden upon them to make a demand . . . to produce the witness." ▮ The basis for this conclusion emanates from the realms of due process, particularly the principle that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068]; accord *Sandstrom* v. *Montana* (1979) 442 U.S. 510, 520 [61 L.Ed.2d 39, 48, 99 S.Ct. 2450]; *Patterson* v. *New York* (1977) 432 U.S. 197, 204 [53 L.Ed.2d 281, 288, 97 S.Ct. 2319]; *Mullaney* v. *Wilbur* (1975) 421 U.S. 684, 685 [44 L.Ed.2d 508, 511, 95 S.Ct. 1881]; *People* v. *Dillon* (1983) 34 Cal.3d 441, 472-473 [194 Cal.Rptr. 390, 668 P.2d 697]; *People* v. *Burres* (1980) 101 Cal.App.3d 341, 352 [161 Cal.Rptr. 593]; see § 1096.) An obvious corollary is that the prosecution cannot shift this burden of proof to the defendant. (*Sandstrom* v. *Montana, supra,* at p. 524 [61 L.Ed.2d at p. 51]; *Patterson* v. *New York, supra,* at p. 215 [53 L.Ed.2d at pp. 294-295]; *Mullaney* v. *Wilbur, supra,* at p. 701 [44 L.Ed.2d at p. 520]; *People* v. *Garcia* (1984) 36 Cal.3d 539, 550 [205 Cal.Rptr. 265, 684 P.2d 826]; see *People* v. *Hedrick* (1980) 105 Cal.App.3d 166, 171 [164 Cal.Rptr. 169].)

Defendants' invocation of these rules in the trial court arose within the larger context of their claim that subdivision (c) of section 872, by requiring

that a defendant make "reasonable efforts" to produce the declarant of the written statement at the preliminary examination, "lighten[s] the prosecution's burden of proof or burden of going forward with the evidence" and thereby "violates a defendant's right against self-incrimination." Defendants in their briefs have not significantly advanced beyond reiterating this elliptical conclusion. The People, however, forced to grapple with the apparent import of the trial court's comments, contend that the procedure specified by the statute is not "so onerous as to violate . . . due process rights." We agree that, for purposes of our review, it has not been conclusively established that section 872 entails an inevitable collision with the most fundamental and all-inclusive of constitutional protections furnished to an accused.

Due process is not a static concept. Determinations of what process is due requires a sensitive appreciation of context and a rejection of mechanical formulas. Half a century ago Justice Cardozo put it thus: "Due process of law requires that the proceedings shall be fair, but fairness is a relative, not an absolute concept. It is fairness with reference to particular conditions or particular results." (*Snyder* v. *Massachusetts* (1934) 291 U.S. 97, 116 [78 L.Ed. 674, 684, 54 S.Ct. 330, 90 A.L.R. 575].) The courts of this state take a similar approach: "Due Process is a flexible concept; the precise procedures necessary to prevent the arbitrary deprivation of a constitutionally protected interest vary 'with the subject-matter and the necessities of the situation.'" (*In re Bye* (1974) 12 Cal.3d 96, 103 [115 Cal.Rptr. 382, 524 P.2d 854], cert. den., 420 U.S. 966 [43 L.Ed.2d 679, 95 S.Ct. 1437]; accord *Fort* v. *Board of Medical Quality Assurance* (1982) 136 Cal.App.3d 12, 23 [185 Cal.Rptr. 836]; see *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 617 [156 Cal.Rptr. 718, 596 P.2d 1134].)

 The due process principles that the prosecution must prove guilt beyond a reasonable doubt and cannot shift this burden to the defendant, do not command a defendant to stand aloof from the processes which may eventually result in the loss of his liberty. Due process is not synonymous with total inaction and noninvolvement. Constitutional rights are not self-enforcing. Some measure of responsibility for their vitality rests with their beneficiaries. Accordingly, the principle has evolved that in general "it is the accused who must act to protect his interests . . . ." (See *In re Koehne* (1960) 54 Cal.2d 757, 759 [8 Cal.Rptr. 435, 356 P.2d 179]; *People* v. *Watson* (1977) 75 Cal.App.3d 384, 399 [142 Cal.Rptr. 134].) Some actions undertaken by the defense may result in benefit to the prosecution, yet due process is not violated. To cite just one example of this, a defendant may have to involve himself in discovering and producing for trial an informer who may give damaging testimony. (See *People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1]; *Price* v. *Superior Court*

(1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721]; *People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 828 [187 Cal.Rptr. 296].)

Subdivision (b) of section 872 requires that if a prosecutor intends to introduce a written statement in lieu of testimony he must furnish a copy to the defendant "at the time of the arraignment or at least 10 court days prior to the date set for the preliminary hearing." (See fn. 1, *ante.*) An examination of the copy will alert the defense to its import and importance, and will allow the defendant to decide whether the declarant should be interrogated at the preliminary examination. If the defendant desires to cross-examine the declarant, subdivision (c) provides that he must then "make[] reasonable efforts to secure the attendance of the witness . . . ." (*Ibid.*) If he is unsuccessful he may then request, and the magistrate "shall grant[,] a short continuance," and the magistrate additionally "shall require the prosecuting attorney to present the witness for cross-examination."

With regard to the "demand" of which the trial court mentioned in its comments quoted above, defendants and the People have treated it as equivalent to a telephone call from the defense to the prosecutor obligating the prosecutor to secure the personal attendance of the declarant at the preliminary examination. They dispute whether such a call would constitute "reasonable efforts" within the meaning of subdivision (c). Analysis of this point is aided by analogy to the rules governing admission of hearsay evidence. One of the exceptions to the hearsay rule allows introduction of an unavailable witness' former testimony if "reasonable diligence" has been exercised to secure the witness' attendance. (See Evid. Code, §§ 240, subd. (a)(5) and 1291.) Whether such diligence was exerted is a factual question to be determined according to the circumstances of each case. (See *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360, 366 [194 Cal.Rptr. 152, 667 P.2d 1165]; *People* v. *Enriquez, supra,* 19 Cal.3d at p. 235; *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 853, fn. 10 [83 Cal.Rptr. 586, 464 P.2d 42].) We believe that the question of what constitutes "reasonable efforts" for purposes of section 872 should be treated in a like fashion.

As previously noted, defendants made no efforts to utilize the procedures of section 872. There is nothing in the record which suggests that they otherwise attempted to locate Kearney. There is likewise nothing which leads us to believe that a telephone call from the defense would not be all that is required to have the prosecutor produce the declarant at the preliminary examination. Ultimately the prosecutor, as the proponent of the hearsay statement, must either produce the declarant or suffer exclusion of the written statement. Subdivision (c) of section 872 recognizes this reality by expressly providing that "[i]f the prosecuting attorney fails to present the witness for cross-examination, the statement of the testimony of the witness

shall not be considered as evidence in the examination." (See fn. 1, *ante.*) The magistrate, sitting as the trier of fact, and having due regard for the principles of due process, will be best situated to determine what constitutes "reasonable efforts" within the meaning of section 872. We consequently believe that "'the precise limitations to be placed on the words in question can best be specified when actual cases requiring such interpretation are presented.'" (*County of Nevada* v. *MacMillen, supra,* 11 Cal.3d at p. 674.)

Neither the People nor this court excludes the possibility that "reasonable efforts" might be construed in a manner which may impinge upon due process. But we cannot accede to defendants' exaltation of that concept which takes no account of the countervailing principle that a defendant must act to protect his own interests and which excludes the possibility of a telephone call satisfying section 872. So long as that possibility exists, we cannot agree with the trial court's apparent conclusion that the statute, on its face, deprives defendants of due process.

### *Privilege Against Self-incrimination*

■ A defendant's right not to be compelled to produce testimonial evidence which may tend to incriminate himself is guaranteed by the United States Constitution (U.S. Const., 5th Amend.), which is also obligatory upon the states. (*Malloy* v. *Hogan* (1964) 378 U.S. 1, 7-8 [12 L.Ed.2d 653, 658-659, 84 S.Ct. 1489].) California secures the privilege by both Constitution (Cal. Const., art. I, § 15) and statute (Evid. Code, § 940). **(13)** Defendants' method of raising the applicability of this issue in the trial court was to assert that "[a]ny attempt to lighten the prosecution's burden of proof or burden of going forward with the evidence violates a defendant's right against self-incrimination, secured by the Fifth Amendment to the United States Constitution and applied to the states through the Fourteenth (see generally *People* v. *Collie* (1981) 30 Cal.3d 43." We have previously examined this argument on the premise that it involved principles of due process. Although the self-incrimination aspect of defendants' argument does not appear to have been accepted by the trial court, we address it in the interest of completeness.

For a number of years the California and United States Supreme Courts tended to view self-incrimination primarily as a factor which affected the prosecution's burden of proving guilt beyond a reasonable doubt. For example, the California Supreme Court in 1969 stated: "We recognize, of course, with the United States Supreme Court, 'that the American system of criminal prosecution is accusatorial, not inquisitorial, and that the Fifth Amendment privilege is its essential mainstay. . . . Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence

independently and freely secured, and may not by coercion prove a charge against the accused out of his own mouth.' (*Malloy* v. *Hogan* (1964) 378 U.S. 1, 7-8. . . .) The People must 'shoulder the entire load' of their burden of proof in their case in chief, without assistance either from the defendant's silence or from his compelled testimony. (*Tehan* v. *Shott* (1966) 382 U.S. 406, 415 . . .; *Griffin* v. *California* (1965) 380 U.S. 609 . . .; *Murphy* v. *Waterfront Com.* (1964) 378 U.S. 52 . . . .)" (*People* v. *Schader* (1969) 71 Cal.2d 761, 770 [80 Cal.Rptr. 1, 457 P.2d 841]; accord *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 325 [85 Cal.Rptr. 129, 466 P.2d 673].)

So long as the analytical focus remained on the defendant himself, the joinder of self-incrimination and due process was accepted at both state and federal levels. Divergence appeared when the courts confronted the problem of whether the privilege against self-incrimination extended beyond the defendant himself. Whereas the federal constitution would not reach statements made by third parties to the defense (see *Fisher* v. *United States* (1976) 425 U.S. 391, 396-401 [48 L.Ed.2d 39, 47-48, 96 S.Ct. 1569]; *United States* v. *Nobles* (1975) 422 U.S. 225, 233-234 [45 L.Ed.2d 141, 150-151, 95 S.Ct. 2160]; *Couch* v. *United States* (1973) 409 U.S. 322, 327-328 [34 L.Ed.2d 548, 553-554, 93 S.Ct. 611]) the California constitutional privilege was held to cover such vicarious defensive matters. (*People* v. *Collie, supra,* 30 Cal.3d at pp. 51-52, fn. 2; *Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 525 [134 Cal.Rptr. 774, 557 P.2d 65]; *People* v. *Thornton* (1979) 88 Cal.App.3d 795, 799-801 [152 Cal.Rptr. 77].) Any claim that defendants' privilege against self-incrimination is in any way implicated by Kearney's statement must therefore be founded solely upon the protections of article I, section 15 of the California Constitution.

We have examined defendant's contention to determine whether a question of self-incrimination is presented, and if so, in what fashion. We conclude that there is no aspect of the contention to which the privilege applies. There is no direct protection because the statement is not made by either of defendants. There is no derivative protection under the California Constitution because the statement was not made either by a defense witness or to the defense in the form of an investigation. (Cf. *People* v. *Collie, supra,* 30 Cal.3d 43; *People* v. *Thornton, supra,* 88 Cal.App.3d 795.) The statement is instead from the victim, the quintessential nondefense witness.

We conclude that defendants do not seriously press a claim that their privilege against self-incrimination has been or will be impaired by section 872. Nor could such a claim be sustained. The essence of their contention concerns the prosecution's burden of proving guilt beyond a reasonable doubt. It is therefore controlled by the preceding discussion on due process.

### III.

Defendant's arguments are innovative and possess an alluring superficial plausibility. At some later stage of proceedings where a greater factual showing is made, or in some other situation, such arguments may prove to be well taken. They cannot be sustained on this appeal. ██ "The rule is well established . . . that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; see *Willadsen* v. *Justice Court* (1983) 139 Cal.App.3d 171, 178 [188 Cal.Rptr. 488]; *People* v. *Parker* (1973) 33 Cal.App.3d 842, 849 [109 Cal.Rptr. 354]; *People* v. *Maugh* (1969) 1 Cal.App.3d 856, 862 [82 Cal.Rptr. 147].) Over a century ago the United States Supreme Court stressed the wisdom and necessity for this rule: "Hypothetical cases of great evils may be suggested by a particularly fruitful imagination in regard to almost every law upon which depend the rights of the individual or of the government, and if the existence of laws is to depend upon their capacity to withstand such criticism, the whole fabric of the law must fail." (*United States* v. *Lee* (1882) 106 U.S. 196, 217 [27 L.Ed. 171, 181, 1 S.Ct. 240].) Defendants' display of hypothetical situations furnishes an inappropriate basis for rending that all too delicate and currently tattered fabric.

In order to avoid any misunderstanding, we emphasize the very limited scope of our holding. Dangers and problems there may well be in the operation of section 872, but they are not clear and present and do not demand resolution on this appeal. Defendants' speculative arguments have not convinced us that section 872's "unconstitutionality clearly, positively, and unmistakably appears" or that its "provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (See *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at pp. 180-181; *In re Dennis M., supra,* 70 Cal.2d at p. 453.) We therefore hold only that, on the limited factual basis currently before us, defendants have not demonstrated that section 872 is unconstitutional on its face.

The order setting aside the information is reversed.

Low, P. J., concurred.

**HANING, J.**—I respectfully dissent. The right of confrontation guaranteed by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution contemplates a face-to-face con-

frontation. (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 63-64 [65 L.Ed.2d 597, 605-606, 100 S.Ct. 2531]; *California* v. *Green* (1970) 399 U.S. 149, 157, 158 [26 L.Ed.2d 489, 496, 497, 90 S.Ct. 1930]; *People* v. *Chavez* (1980) 26 Cal.3d 334, 349-351 [161 Cal.Rptr. 762, 605 P.2d 401].) It is obvious that without this confrontation the corollary right of cross-examination would be meaningless. How does one cross-examine a document?

As the majority correctly states, the right of confrontation and cross-examination extends to the preliminary hearing. (*Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241]; *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304].) Penal Code section 865 also provides that "[t]he witnesses [at the preliminary hearing] must be examined in the presence of the defendant, and may be cross-examined in his behalf." Since these rights have their basis in the federal and state Constitutions, I disagree that the statutory enactment of Penal Code section 872, can assume precedence. I have read the decisions cited by the majority, but interpret them differently. This is not a case involving the admission of a statement which, in itself, is an exception to the hearsay rule, and which precedent also recognizes as an exception to the right of confrontation. It is not a case involving prior testimony given under oath and subject to full cross-examination on the prior occasion—we are not dealing with an unavailable witness.

We are dealing with first instance testimony—the direct testimony of the victim of an alleged crime—a victim who has not been shown to be unavailable to appear and testify. I am unaware of any existing decision which permits the prosecution to introduce the testimony of the alleged victim by written statement, if the victim is alive and available to testify. The majority notes that due process is a flexible concept, but I doubt that it stretches this far.

The majority reasons that defendant can avoid the operation of the statute and secure his right of confrontation by merely notifying the prosecutor that he wants the witness present. However, this is not what the statutes says. I agree that we are required to interpret the statute so as to uphold its constitutionality, if possible (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 253-255 [158 Cal.Rptr. 330, 599 P.2d 636]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 229-230 [110 Cal.Rptr. 144, 514 P.2d 1224]), but we are not licensed to rewrite it. It states, in part, that "*[i]f the defendant makes reasonable efforts to secure the attendance of the witness* but is unsuccessful in securing his or her attendance, the court shall grant a short continuance at the request of the defendant and shall require the prosecuting attorney to present the witness for cross-examination . . . ." (Pen. Code, § 872, subd. (c), italics added.) My experience leads me to the

conclusion that most trial courts interpret "reasonable efforts" to secure the attendance of a witness to mean that the witness has been placed under subpoena or court order to appear, or that counsel has exerted reasonable diligence to subpoena the witness. (See, e.g., Witkin, Cal. Criminal Procedure, Trial, § 284; *People* v. *St. Germain* (1982) 138 Cal.App.3d 507 [187 Cal.Rptr. 915]; *People* v. *Masters* (1982) 134 Cal.App.3d 509 [185 Cal.Rptr. 134].) If the Legislature intended the phrase "reasonable efforts" to mean simply a phone call to the district attorney, why did it not say so? The obvious answer is that they meant something more. Since similar language appears in other statutes (see Evid. Code, § 240, subd. (a)(5): "reasonable diligence;" see also Pen. Code, § 1050, subd. (b) et seq., for requirements to obtain a continuance in a criminal proceeding), we may assume the Legislature was aware of existing law when it enacted Penal Code section 872. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977 [140 Cal.Rptr. 669, 568 P.2d 394].)

As a general rule, the defendant is not required to lighten the prosecution's burden by being forced to produce the evidence the state is relying upon to convict him. (See, e.g., *People* v. *Collie* (1981) 30 Cal.3d 43, 50 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]; *Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 524-525 [134 Cal.Rptr. 774, 557 P.2d 65]; *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326-327 [85 Cal.Rptr. 129, 466 P.2d 673].) Although these cases deal primarily with Fifth Amendment rights and discovery, the principle remains that the prosecution has the burden of establishing probable cause.

In summary, I conclude the statute is unconstitutional on its face unless we judicially rewrite it, and that we are not permitted to do. One of the primary purposes of the preliminary hearing is to weed out groundless and unprovable charges in order, inter alia, to save the time and expense of trial for both sides.[1] (*People* v. *Terry* (1962) 57 Cal.2d 538, 554 [21 Cal.Rptr. 185, 370 P.2d 985]; *People* v. *Elliot* (1960) 54 Cal.2d 498, 504 [6 Cal.Rptr. 753, 354 P.2d 225].) In order to do so the magistrate must be able to make an informed and reasoned decision based upon the evidence. This requires a decision on the credibility of the witnesses. The affidavit contemplated by Penal Code section 872 does not provide the court with much upon which to base a decision on credibility. Furthermore, the affidavit system of litigation poses some very real problems. For instance, the statute permits the

---

[1] I presume one of the purposes of this statute was to save time and expense at the preliminary hearing. The expeditious processing of criminal cases is commendable, and required by statute. (Pen. Code, § 1050.) However, given the number of cases that are diposed of at the preliminary hearing (see 1984 Judicial Council Annual Report to the Governor), Penal Code section 872 may well be false economy. The time and expense of a jury trial greatly exceeds that of a preliminary hearing.

drafter of the affidavit to include only that information which he feels is necessary for a holding. While such an affidavit may be technically correct, it may also eliminate a wealth of information which affects the fact finding process. Whether the exclusion of such information is deliberate or inadvertent, the result is the same—a complete statement of the facts is suppressed.

Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth." (5 Wigmore, Evidence (Chadbourn rev.ed 1974) § 1367, p. 32; *In re Miguel L.* (1982) 32 Cal.3d 100, 107-108 [185 Cal.Rptr. 120, 649 P.2d 703]; *People* v. *Fries* (1979) 24 Cal.3d 222, 231 [155 Cal.Rptr. 194, 594 P.2d 19].) It is guaranteed by the Constitution and denied by the statute under consideration. The bottom line for reviewing any statute is that it must pass constitutional muster, and this one does not. For that reason, I would affirm the order of dismissal.

Respondents' petitions for review by the Supreme Court were denied May 31, 1985.